SAMUEL EVANS, Appellant, *v.* SAMUEL T. HUBBARD and Others, Copartners Doing Business under the Firm Name and Style of HUBBARD BROS. & Co., Respondents.

First Department, May 6, 1927.

Brokers — cotton brokers — action for damages arising from unauthorized sale of plaintiff's contracts for purchase of cotton futures — plaintiff had contract for marketing cotton without margin — purchase upon margin charges broker with duty of carrying securities until additional margin has been demanded and refused — plaintiff had no notice of sale — effect of notice in statements reciting that defendants reserved right to close accounts without notice when " margins are running out " was question for jury — error to direct verdict in favor of defendants.

This is an action by a purchaser of cotton futures to recover damages based on an act of the defendants, cotton brokers, in selling the futures without the

authority of the plaintiff at a time when the market was rising. The contract between the parties was that the brokers were to carry the cotton for the plaintiff without a margin. The plaintiff, however, did give his notes as security for his account some time after the account was opened and these notes were acknowledged by the brokers. A short time before the plaintiff was sold out he was advised by the local representative of the New York brokers that the brokers had no intention of selling him out. About four days after this conversation his account was closed out without notice, with a very small credit.

A purchase upon margin charges the broker with the duty of carrying the cotton purchased for his customer until additional margin has been demanded and refused, and if some other agreement was made, it is for the brokers to prove that agreement and that they have acted thereunder.

The court should not have directed a verdict for the defendants on the theory that notices printed on statements to the effect that the brokers had the right to sell out marginal accounts when the " margins are running out," gave the defendants the right to make the sale in question. It should have been left to the jury to determine whether or not such statements made out a new contract in view of the fact that the brokers had carried the account without margin, the request for security by way of promissory notes, and the assurances given the plaintiff shortly before the sale that his account would not be closed out.

Appeal by the plaintiff, Samuel Evans, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 7th day of November, 1925, upon the verdict of a jury rendered by direction of the court.

*Theodore Kiendl* of counsel [*William C. Cannon* and *Frederic W. Girdner* with him on the brief; *Stetson, Jennings & Russell,* attorneys], for the appellant.

*George S. Mittendorf* of counsel [*Ramsey Clayton* with him on the brief; *Geller, Rolston & Blanc,* attorneys], for the respondents.

McAvoy, J. A verdict in this action was directed by the learned trial court in favor of the defendants. Plaintiff's counsel moved to go to the jury on all issues of fact, and specifications of such issues were waived. This motion was denied.

The suit was for damages arising out of plaintiff's contracts for the purchase of 1,200 bales of October cotton, which had been executed on the New York Cotton Exchange by the defendants and held for plaintiff's account. Plaintiff claims damages in the sum of $27,000 by reason of unauthorized sale of the contracts. The answer is that the contracts were closed out with plaintiff's authority and in accordance with the legal rights of defendants.

The plaintiff is a farmer and warehouseman dealing in cotton in Georgia. Beginning in December, 1920, he purchased cotton on the New York Cotton Exchange through the defendants as brokers. At the time of the sale he owned 1,200 bales of cotton for delivery in the future, 800 bales for future October delivery and 400 bales

for July delivery. In June, 1921, the plaintiff authorized the defendants to sell 400 bales of the July cotton and to substitute 400 bales of October cotton. This sale caused a loss of over $9,000 and made his holding 1,200 bales of October cotton after June 25, 1921. The account of plaintiff was carried out without any margin from its beginning in December, 1920, to July 11, 1921. During most of this time the cotton market was falling, and defendants on this date requested plaintiff to supply margin, and on several other occasions, but on no occasion was it threatened that plaintiff's contracts would be sold out.

When the July cotton was sold and October cotton purchased in June, 1921, the plaintiff talked over the telephone with Mr. Vickery, who was the local agent of the defendants, and he suggested that Evans give the defendants promissory notes to margin his account. On July eleventh of that year Evans telephoned Vickery and stated that he would give the defendants his notes for $25,000 and $10,000, due in 90 and 120 days, respectively, from that date as security for his account. Vickery requested Evans to send the notes to him, and said he would take them to New York to give to the brokers. The notes were received and acknowledged in a letter to plaintiff in July, 1921. Thereafter Vickery delivered these notes to the brokers and they acknowledged receipt thereof about a week later. After these notes were given to the brokers and they had been acknowledged by both the local agent and the brokers in New York, plaintiff had no communications whatever from the defendants or their agent until August, 1921, four days prior to the time when the sale, said to be unauthorized, was had. Vickery on that occasion called plaintiff up on the telephone and suggested that he " hedge " his contracts, and Evans asked Vickery, "Are you thinking of selling that cotton?" and Vickery said, " We have no idea of doing that." Four days later, on August 29, 1921, without any further notice or conversation between the plaintiff and the defendants or the defendants' agent, and without any communication whatever or demand of any character, defendants sold out the plaintiff's 1,200 bales of October cotton, which sale showed an alleged credit balance in favor of plaintiff of three dollars and forty cents. Evans first found out that this sale had been made in a telephone conversation with Vickery on the day of the sale. Evans stated to Vickery that he had not wanted the cotton sold but wanted to be reinstated in his position. Thereafter Evans wrote to Vickery protesting against the sale of his cotton contracts and demanding reinstatement of his account. Evans also telegraphed to defendant Hubbard Bros. & Co. in New York and wrote to it on September eighth asking a reinstatement in the

market. The defendant refused to reinstate the plaintiff and the cotton market continued to rise. The defendant retained possession of the promissory notes which the plaintiff had given it in July up to the time of the trial.

The action seeks to recover the difference between the purchase price of 1,200 bales of cotton and the amount that plaintiff would have realized at the highest price to which the market rose within a reasonable time after the unauthorized sale.

We think there was no justification proven for selling out these cotton contracts without notice to the plaintiff and without any further demand for margin. There was no authority from the plaintiff, according to his proof, to make this sale, and the circumstances all indicated, so far as his side of the case was concerned, that he had a contract for the carrying of this cotton without margin, and was not to be sold out without a demand and notice of intention to sell.

Defendants' reliance on the printed sentence which appears on the various statements rendered to the plaintiff has no merit. This notice reads: " It is further understood that on all marginal business, the right is reserved to close transactions when margins are running out, without further notice, and to settle contracts in accordance with rules and customs of Exchange where order is executed."

Whether or not this was the contract of the parties was a fact question which the mere sending of the notice in statements of plaintiff's account did not conclusively establish. It was a matter for the jury to decide on all the facts what the duties and obligations of the brokers were with respect to demand for margin and notice of sale, and plaintiff cannot be held as a matter of law to have agreed that his cotton might be sold without notice whenever margins were running out, in the absence of a special agreement to that effect. A purchase upon margin charges the broker with the duty of carrying the securities purchased for his customer until additional margin has been demanded and refused. If some other agreement was made, it is for the defendants to prove. Whether the effect of these notices on the statements was to make out a new contract was a jury question. The continuance of carrying the account without margin, the request for security by way of the promissory notes, the holding without sale of the cotton purchased in December, 1920, until August, 1921, the assurance by defendants' local agent a few days before the sale that there was no idea of selling out, indicate that no such agreement as might be implied from the printed portion of the statement was intended by these parties.

The cause should have been submitted to the jury for decision, and it was erroneous to decide it as matter of law.

The judgment should, therefore, be reversed and a new trial ordered, with costs to appellant to abide the event.

DOWLING, P. J., MERRELL, FINCH and PROSKAUER, JJ., concur.

Judgment reversed and new trial ordered, with costs to the appellant to abide the event.