Hagarty, Acting P. J.
A naturalized American citizen named F. Eugen Nortz, hereinafter referred to as the father, created irrevocable trusts for the benefit of three of his children, citizens and residents of Germany, hereinafter referred to as the German children, as evidenced by written agreements between the father and the German children made in November of 1932, and in February of 1937. .Respondent, hereinafter referred to as the petitioner, a citizen of the United States of America, is a fourth and remaining child.
It is unnecessary for the purposes of this appeal to determine whether the original agreement was merely amended- or actually *487 superseded by the subsequent one. Considered together they show, generally, that the father was endowed with plenary power to invest the corpus in his own name or as trustee,-or in any other name, without obligation to account. The nature and extent of the corpus were not set forth in the agreements, so that they remained undisclosed even to the beneficiaries. The father was empowered to hold the property during his life and, if a German child predeceased him, the property held in trust for such child reverted to the father. On the death of the father, a substituted trustee was empowered to continue the investments. Although interest would then become payable to the German children, the trusts would terminate only on consent both of beneficiary and substituted trustee. There are elaborate provisions for distribution of such corpus as, after the death of the father, shall not have passed by termination of the trusts during the lives of the German children..
The father died on December 7,1941, leaving a will which was admitted to probate. The petitioner, by virtue of his status as executor of the will, became substituted trustee under the trust agreements. Petitioner is also sole legatee of the residuary under the will, so that he would receive the corpus of the trusts if, for any reason, they proved invalid or ineffective. During the lifetime of the father, all the corpus, so far as appears, was lent to petitioner and the father even purported to cancel interest due from petitioner on this indebtedness.
The estate tax return of petitioner did not include the corpus as property of the father, nor did the income tax returns of the father for the years 1940 and 1941, or of the son for that part of the year 1941 remaining after the death of the father, include income on the corpus. The provisions of these trust agreements and the manipulations which they afforded furnished the Commissioner of the Bureau of Internal Revenue with substantial grounds for regarding the corpus and income as the property of the father and, upon his death, of petitioner, even if the trusts themselves be valid under local law. (Helvering v. Hallock, 309 U. S. 106; Commissioner v. Estate of Field, 324 U. S. 113; Helvering v. Clifford, 309 U. S. 331.) Tax deficiencies attributable to the foregoing exclusions were imposed, under settlement agreements with petitioner entered into in August of 1945, as to the estate in the sum of approximately $157,000; as to the 1940 income of the father, $2,095.19; as to the 1941. income of the father, $6,669.67; and as to the 1941 income of petitioner, $1,213.39. An order of the Tax Court was made on September *488 6, 1945, on stipulation of the parties, as to the 1940 income tax deficiency.
Petitioner instituted the present proceeding in December of 1945, wherein he seeks settlement of his account as substituted trustee, upon notice to the Alien Property Custodian, who succeeded to the interests of the German children by virtue of a vesting order made November 14, 1942 (see Trading with the Enemy Act of 1917, as amd.; U. S. Code, tit. 50, Appendix, §§ 5,6; Executive Order No. 9095). He also seeks a determination that the trusts were invalid and that the custodian, as another branch of the Government, is estopped from asserting to the contrary. When these later claims were disposed of adversely to him by a ref eree,' petitioner brought on a motion leading to the order presently under review wherein it is adjudicated that the custodian is not a.party in interest because he is estopped from taking a position inconsistent.with that of the Commissioner of Internal. Eevenue. This was error.
As to the estate tax deficiency, the Bureau of Internal Eevenue, hereinafter' referred to as the Bureau, in its preliminary or thirty-day letter; stated: “ The investigation disclosed that this property is a part of the gross estate under section 811 (a) of the Internal Eevenue Code because no valid trust was created, or if a. valid trust was created the corpus is includible in the gross estate under sections 811 (c) and 811 (d) of the-Internal Eevenue Code, because decedent retained the possession or enjoyment of the property during his lifetime, the transfer was conditioned upon the survivorship of. the beneficiaries, the transfer was in contemplation of death, and/or decedent retained-the power to alter, amend or revoke the trust.” In its ninety-day letter or notice of prospective assessment of a tax deficiency as to the 1940 income, the Bureau wrote: “ It is held that the following amounts purportedly paid to the non-resident alien individuals listed constitutes income taxable to you under the provisions of section 22 (a) of the Internal Eevenue "Code as applicable to the taxable year 1940.” After assessment, the Bureau' advised that it had resulted from a holding “ upon the basis that the decedent continued to be the owner of the corpus after the alleged trust was' created and his control over such corpus was in all essential respects the same after the alleged trust was created as before.” As to the 1941 income tax deficiencies, the Bureau" in preliminary letters set forth no precise grounds, viz.:' “Including as income of the above [the father], interest paid to three non-resident children of the deceased ” and “ Adjustment of fiduciary income.”
*489 Petitioner also relies on statements of the Burean, in pre-' liminary letters with respect to gift taxes for the years 1940 and 1941, that “ the investigation disclosed that no valid trust was created.” Although the Bureau could well be deemed to have meant that the trusts were invalid for tax purposes only, as distinguished from all purposes, the matter is academic, as no such gift taxes have been assessed or collected.
There is nothing in any of the foregoing which would serve to show inconsistency therewith on the part of the appellant, who has been substituted as successor to the custodian, in urging that the trusts are valid. The Bureau was not required to and did not necessarily determine to the contrary in exacting the tax deficiencies.
Petitioner, moreover, has no standing to urge the application of the doctrine of estoppel. He may do so only if appellant could be charged with such a conflicting position as would visit injury upon him. (Evans v. Hubbard, 220 App. Div. 423; Matter of Wadhams, 249 App. Div. 271.) As a trustee who has undertaken to uphold and carry out the trusts, he is not prejudiced by this claim of validity. Nór is he prejudiced even in his individual capacity as one who seeks the trust property for himself. After notices by petitioner of the pendency of the tax deficiency proceedings at various of their stages, the custodian, on August 7,1945, and before payment of any deficiencies, advised petitioner that he would interpose no objection to the payment of estate tax deficiencies proportionately out of assets of the estate of the father and assets of the vested trusts, but that “ The amount of tax properly allocable to the vested funds, you understand, must be verified in the accounting to be submitted by you, as Trustee, and you have agreed to account with all convenient speed and, upon such accounting, you agree to turn over to the Alien Property Custodian all remaining assets held by you, as Trustee.” Thus, even prior to payment of the tax deficiencies, petitioner was put on notice of the position of the Custodian. Petitioner stands to lose nothing by reason of having paid the tax deficiencies. These he has charged off to the trusts in his account, with the exception of the sum of $1,213.39, which was assessed against him personally as a portion of the 1941 income tax deficiency. As to this latter sum, petitioner states in his account that he should be reimbursed out df the trust funds, if the trusts are valid.
Finally, even if it be assumed that in assessing and collecting the tax deficiencies the Bureau flatly and necessarily determined that the trusts were invalid for all purposes, its determinations *490 are conclusive only within the field of taxation and, therefore, the substantive rights of the appellant as successor to the interests of the German children and his standing to establish them are not affected.
It would be fruitless to attempt to analyze and reconcile the judicial pronouncements which deal with the alleged conclusiveness of a determination of the Bureau or of a court of competent jurisdiction as to a tax matter. (See Griswold, Bes Judicata in Federal Tax Cases, 46 Tale L. J. 1320-1358.) Whatever their effect within the field of taxation, they do not sérve to bar determination of broader substantive rights. In Blair v. Commissioner (300 U. S. 5), the Commissioner of Internal Bevenue ruled, and was sustained by a Federal court adjudication, that income from a trust was taxable to a beneficiary on the ground that his purported assignment thereof was invalid. Despite that ruling and adjudication, the United States Supreme Court held that a subsequent determination of an Illinois court, wherein the assignment was held valid, was conclusive thereafter on the Commissioner of Internal Bevenue. In conformity with the holding in the Blair case (supra), it was also held in Sunshine Coal Co. v. Adkins (310 U. S. 381) that a determination of the status of a taxpayer, in a proceeding instituted by him against the National Bituminous Coal Commission to test the constitutionality and effect of legislation, is binding thereafter upon the Commissioner of Internal Bevenue as a mere agency through which taxes are collected.
It is established in this State that a tax order is binding on questions of taxation only. (Matter of Ullmann, 137 N. Y. 403; Amherst College v. Ritch, 151 N. Y. 282; Matter of Burger, 123 Misc. 308, 312-313; Matter of Lord, 155 Misc. 628-629.) A claim similar to that advanced by petitioner was summarily disposed of in City of Mt. Vernon v. N. Y., N. H. & H. R. R. Co. (232 N. Y. 309, 319), viz.: “ If the assessors erroneously assessed defendant for property not owned by it, defendant had a remedy at law for relief from such assessment. By payment of taxes thereon, neither that act, nor the error if one was made by the assessors, could operate as an estoppel against the public and vest title to the land in defendant, it being a trespasser thereon. The assessors of the city and the city combined were powerless to thus surrender a public highway or any portion of the same to defendant.”
By the same token, a determination by a taxing authority cannot serve to divest appellant of his interest in property which, by virtue of Federal legislation, he has acquired “ as completely *491 as if by conveyance, transfer or assignment ” from the German children. (Commercial Trust Co. v. Miller, 262 U. S. 51, 56.)
The additional contention of petitioner that as matter of lav no valid trust or trusts were created for the reason that the agreements effected an unlawful suspension of the power of alienation is without merit. The provision in the earlier agreement, assuming it to be operative, with respect to the German children being domiciled other than in Germany, merely relates to earlier termination of the trusts which, in any event, so far as concerns them, are measured by their lives. The nature and extent of the identifiable corpus of the trusts, as to which the appellant by his objections is primarily concerned, remain the subject of proof.
The order should be reversed on the law, with $50 costs and disbursements, and the motion denied, with $10 costs.
Carswell, Johnston, Adel and Nolan, JJ., concur.
Order reversed on the law, with $50 costs and disbursements, and the motion denied, with $10 costs. [See post, p. 1019.]