Burke, J.
The issue here is whether the payment of local real estate taxes and assessments as expenses of sale, rather than the application of that amount toward the payment of a Federal lien filed against the mortgagor prior to the accrual of local taxes, disregards the alleged right of the tax lien of the United States to prior payment.
We find that the Federal tax lien is not entitled to priority over subsequently accrued local tax liens—superior to the *35 mortgage debt — since the respective liens are not comparable charges on real property and the ‘ mortgagee ’ ’ has an absolute preference over Federal liens.
Plaintiff commenced this action in October, 1958 to foreclose its real property mortgage given by Joseph B. Victory, dated and recorded April 5, 1946. At the time of verification of the complaint there was a balance due on the bond of $1,473.75, with interest at the rate of 5%' per annum from January 10, 1958. The United States was made a party because of a tax lien it filed in the Erie County Clerk’s office January 15, 1953 against the mortgagor, since deceased. Its answer stated a balance due on the lien of $689.07, plus interest. Plaintiff did not advance any sums for payment of local real property taxes and assessments, which became liens upon the land on and after July 1,1957.
The mortgagee moved for summary judgment providing that the premises be sold free of the United States tax lien, but subject to all real property taxes and assessments. This motion was granted by the Brie County Court. On appeal by the respondent, the Appellate Division reversed and remitted the case to the County Court, stating that the discretionary authority to have the property sold subject to all local real estate taxes “ may not properly be exercised in a case such as this in which there is a problem of circular priorities” (11AD 2d 160). Thereafter the County Court once more granted summary judgment in favor of the mortgagee providing that the premises be sold and directing that the Referee “ shall, as a part of the expenses of the sale, pay out of the proceeds of said sale all real estate taxes, assessments and water rates which are liens upon the property sold, and redeem the property sold from any sales for unpaid real estate taxes, assessments or water rates which have not apparently become absolute ’ ’. The judgment further foreclosed all rights, liens, and equities of redemption in the premises, except as to the one-year period of redemption granted to the United States by section 2410 of title 28 of the United States Code.
On appeal by the United States, the Appellate Division modified the judgment by providing that “ the rule of priorities laid down in United States v. New Britain (347 U. S. 81) applies ” (13 A D 2d 208), and that the local tax liens were not to be paid as expenses of the sale.
*36 The appellant mortgagee contends that the foreclosure procedure of New York is determined by our State law and that a direction to pay local taxes and assessments as expenses of the sale was a proper direction within section 1087 of the New York Civil Practice Act. The United States contends that this court is barred from reaching a determination reversing' the Appellate Division and affirming the judgment of Erie County Court. (United States v. New Britain, 347 U. S. 81.)
Although the United States Supreme Court in recent years has passed on the question of priority of liens and the resulting effect upon mortgagees, their decisions provide no clear command governing us here.
The case of United States v. New Britain (supra) is distinguishable from the present case.
There the Supreme Court assumed, in the posture of the case as it reached that court, that the contest was between the local government and the Federal Government over their respective rights in surplus funds.
In the usual case, as here, however, the state of facts shows that the dispute is really between the mortgagee and creditors of the mortgagor. The debts of the mortgagor obviously can only be satisfied out of such equity in the real property as the mortgagor may have. When the property is sold in foreclosure, the equity of the mortgagor is extinguished except in the event the bid provides a surplus. Any interest of the mortgagor is fully protected. The mortgagor can bid at the sale, bring surplus money proceedings and resist a deficiency judgment by adducing proof that the value of the property exceeded the bids. In New York State the local government is not paid out of the surplus as the mortgage is subject to its liens, but the Federal Government as a creditor of the mortgagor can look only to the surplus for the satisfaction of its lien. The local government lien is not a levy against the mortgagor, but against the land and must be paid together with other costs from whatever funds the sale of the land produces before (if there were no creditors of the mortgagor) any claimed interest of the mortgagor could be asserted. Our State law has not characterized the nature and extent of the Federal tax lien, but has determined the nature and extent of the property interests of the taxpayer (admittedly a State function), which in the case *37 of real property is conditioned upon the payment of annually recurring govermental land taxes, the payment of which may not be avoided by a forclosure sale. Of course, the Federal Government’s claim, which is based on the claimed interest of the mortgagor, can have no better standing, that is, the Federal lien is also to be paid when there is a surplus in which the mortgagor would have an interest. It would manifestly be unjust to require a mortgagee to pay a creditor of a mortgagor when it appears that the mortgagor had no equity in the real property.
In the New Britain suit (supra) the court, at the outset, held that the contestants were vying over rights to funds which were considered as surplus. Federal liens securing unpaid withholding and unemployment taxes and insurance contributions owed by the mortgagor attached to his interest in the property subsequent to two mortgages and a judgment hen, but prior to city liens for unpaid real estate and water taxes. Connecticut law provided that the statutory liens for real estate taxes and water rent took precedence over all other liens or incumbrances. Mr. Justice Mixtox, speaking for the court, conceding that the mortgagee had a preference, stated at pages 85-86: “It does not follow, however, that the City’s liens must receive priority as a whole. We believe that priority on these statutory liens is determined by another principle of law, namely, ‘ the first in time is the first in right. ’ * * * We think that Congress had this cardinal rule in mind when it enacted § 3670, a schedule of priority not being set forth therein. Thus, the priority of each statutory lien contested here must depend on the time it attached to the property in question and became choate.”
Although it may have been the clear intent of Congress that this Federal tax lien have a priority determined by the timeliness with which it attached to the interest of the mortgagor in the real property, New Britain does not indicate that it was the intent of Congress to upset established State procedures in foreclosure actions or curtail the absolute preference granted to mortgagees. The statement (p. 88) that “ The United States is not interested in whether the State receives its taxes and water rents prior to mortgagees and judgment creditors ” is far too removed, in the light of the real issue here, from the court’s interpretation of congressional intent to have any relation thereto.
*38 Not to be lost sight of in its discussion of the relative priority of the liens is the court’s statement that Congress intended to assert the Federal lien ‘‘ as to any funds in excess of the amount necessary to pay the mortgage and judgment creditors.” (United States v. New Britain, 347 U. S. 81, 88, supra; italics supplied.) The Supreme Court there recognized that the mortgagor’s interest in the proceeds of the foreclosure sale, and consequently the United States lien, reaches only surplus moneys.
But such surplus funds cannot be created by the judgment, for they are the moneys paid for the land in excess of the amount decreed in the judgment. A judgment which omits an item of sale expense in order to create a surplus fund to which subsequent liens can attach violates the statute. Rights of lienors in surplus funds are to be protected, but the law of this State cannot be subverted to create a surplus where none might otherwise exist. Our State law does not prevent such lienors from bidding at a foreclosure sale in order to protect their nens; but, inasmuch as they are not forced to bid a sum which will create a surplus, it would be inequitable to force the foreclosing mortgagee to bid an inflated price creating a surplus through the scheme of “ circular priorities ”.
In this case the respondent’s claim that its lien, founded on the interest of the defaulting mortgagor in the real property, should be granted a priority over the lien on the land, concededly superior to not only the mortgagor’s interests in the realty but the mortgagee’s interest as well, depends on the obviously fallacious contention that the lien of the municipality upon the land is akin to the lien of the Federal Government as a creditor of the mortgagor. The plain answer is that the Federal Government is only the creditor of a debtor whose interest in the land is subordinate to the local government lien, which need not be reduced to judgment nor perfected by a filing in the County Clerk’s office. As a lien for taxes for essential services supplied for the benefit of the land, it attached directly to the particular parcel of real property. The Federal lien was filed in the Clerk’s office against a presumed equity in the real property held by the mortgagor. This respondent imagines a surplus, which is as yet nonexistent, against which it would press a lien arising from a debt owed to it by the *39 mortgagor. But in a foreclosure suit the equity of the mortgagor upon which a Federal lien depends should be established according to law, not by an ipse dixit.
The real estate tax and water-rent liens are not liens which attach to the property merely because of an unconnected indebtedness of the owner of the land, as are Federal tax liens, The property itself, in its very nature as land, incurs the indebtedness. It matters not who owns the land for, even if the United States in foreclosing its lien had a Receiver appointed to sell the land, the property could not have been transferred free and clear of the local tax liens attaching while the United States was in possession (see Borock v. City of New York, 268 F. 2d 412).
Thus, the circumstances in the present case are quite different from those assumed in United States v. New Britain (supra). The question is not ‘ ‘ the relative priority of statutory federal and municipal liens to the proceeds of a mortgage foreclosure sale of the property to which the liens attached ” (United States v. New Britain, supra, p. 82), but whether the payment of the Federal lien filed against the mortgagor should be mandated where there is no evidence that the mortgagor has a financial interest at the time of foreclosure. Here we are faced with the true parties in interest—the mortgagee and the Federal Grovernment. Under New York law no funds are deemed surplus until the expenses of the sale, the costs of the action and the amount of the foreclosed mortgage debt plus interest have been fully paid. (Civ. Prac. Act, § 1082). The procedure[1] in this State requires the officer conducting the foreclosure sale to pay out of the proceeds all taxes, assessments and water rates which are liens on the property, unless the judgment *40 directs otherwise. These payments are expenses of the sale by statute. Therefore, the question of what, if any, financial interest the mortgagor-taxpayer had on which the Federal Government had a lien can only be determined under the State law after the foreclosure sale.
The procedure adopted by the Appellate Division does not follow New York State procedure. Up to the present time the expenses of sale have always been determined by State, rather than Federal, law, and even the judgment in New Britain (Brown v. General Laundry Serv., 19 Conn. Supp. 335) recognized that the expenses of sale have priority over any other claim to the moneys realized on the sale. Certainly precedent demands that we should reaffirm the principle that State procedures govern.
Moreover, the Supreme Court in a recent decision has allowed State law to control the procedure of foreclosure and payment of liens. In United States v. Brosnan (264 F. 2d 762, affd. 363 U. S. 237) Federal tax liens attached to property subject to a purchase-money mortgage, but prior to local tax liens.[2] Upon default in payment of the mortgage, the mortgagee caused a confession of judgment to be entered on the bond. A writ of fieri facias for the sale of the property issued to the Sheriff. The United States was not a party to this action. ‘ ‘ The sheriff held the sale of the property on January 3, 1956; it was bid in by Brosnan and Jacob [assignees of the mortgagee] for $6,203 and, it is presumed, the discharge of the mortgage indebtedness. The amount of the hid went to satisfy costs of the sale, and for various outstanding local taxes.” (264 F. 2d, p. 764; emphasis supplied.)
More than a year later the United States brought an action to enforce its lien, but the District Court (164 F. Supp. 357) and the Court of Appeals for the 3d Circuit (264 F. 2d 762, supra) held that the junior lien of the Government was extinguished even though the United States had not been joined as a party. The Supreme Court affirmed the determinations below *41 (363 U. S. 237). The opinion was replete with references to State law and procedure — something not found in New Britain.
The Supreme Court’s attention was drawn to the fact that Pennsylvania gave its own tax liens more favorable treatment than it rendered the Federal liens at pages 25 to 27 of the United States’ brief: “ Indeed, Pennsylvania law itself treats state tax liens more favorably than federal tax liens. A Pennsylvania statute provides that ‘ The lien of all taxes * * * against any real estate within this Commonwealth shall be divested by any judicial sale of such land: Provided, The amount of the purchase money shall equal the amount of the said taxes ’ (Purdon’s Penna Statutes Annotated, Title 53, Section 7104, Appendix, infra, p. 36). While Pennsylvania law permits discharge of a junior lien on realty through foreclosure of a prior mortgage at a sheriff’s sale, the Commonwealth’s liens may be divested only to the extent permitted by statute [eases cited]. Thus, under Pennsylvania law the state’s tax lien will be discharged through foreclosure only if the state’s tax claim is paid in full out of the proceedings. The decision below holds, however, that the same foreclosure proceeding wipes out the federal lien even though the United States receives not a single penny toward payment of its claim. ’ ’
The dissent makes it clear that the objection to Pennsylvania procedure in extinguishing the lien of the Federal Government was not that it was done according to State procedure, but that Pennsylvania procedure did not provide for notice to junior lienors (363 U. S. 261).
Although the main facet of the Brosnan case was a sanction of Pennsylvania’s procedure, whereby the United States was not required to be a party to the action in order to extinguish its lien, the affirmance also necessarily sanctioned that State’s procedure of paying local taxes out of the proceeds of the sale without the necessity of creating a surplus with which to pay liens prior to the local tax liens. (Purdon’s Pennsylvania Statutes Ann., tit. 53, §§ 7103-7105.) This is a departure from the holding in the New Britain case, as that case is construed by the respondents. The Supreme Court in Brosnan also gave effect to the preference accorded to mortgagees by State and Federal law, and the decision tends toward the principle stated in the dissenting opinion of Haynswoeth, J., in United States v. Bond (279 F. 2d 837, 848, cert. den. 364 U. S. 895).
*42 According to respondent’s reasoning, the mortgagee, concededly not under any obligation to pay the Federal lien on the interest of the mortgagor at the time the lien was filed, becomes obligated when it bids in at the foreclosure sale simply because the mortgagee as bidder under State law must bear the cost of unpaid local taxes on the land falling due subsequent to the filing of the Federal lien. This imposition of liability is justified on the assumption that at the time of foreclosure the undetermined financial interest of the mortgagor has a value at least equal to the amount of the unpaid taxes which fell due subsequent to the filing of the Federal lien.
The circumstances present in the case of the foreclosure of a real estate tax lien by a municipality illustrate best the paradoxical result of the application of the rule respondent asserts. Under that rule the municipality which is foreclosing the tax lien for local taxes, which accrued subsequent to the filing of a tax lien filed against the equity of the property owner, shall be obligated to discharge the Federal tax lien in order to secure a clear title. But the interest of such a property owner obviously is worthless, since neither the property owner nor the public would bid on the tax lien which the municipality ultimately had to foreclose. In spite of this evidence of lack of value, the respondent would contend that the Federal lien has a priority because the nonexistent financial interest of the property owner cannot be diminished by giving priority to local taxes accrued subsequent to the filing of the Federal lien, and that, therefore, the municipality must satisfy the Federal lien. In other words, the financial interest of the property owner which was nil develops value through the default of the property owner on local taxes. This nonsequitur had to be resorted to because respondent realizes its lien is not a lien on the land, but is only a lien on the equity of the owner. Therefore, it had to invent an equity which the owner could be said to possess at the time of the foreclosure in order to avoid the controlling State law which provides that the nature and extent of the property interests of a defaulting mortgagor can only be determined after a foreclosure sale conducted according to the State laws. The patent infirmity of this contrivance explains why the respondent has improperly invoked a canon, in a matter involv *43 ing disparate liens, which is relevant only to the relationships of kindred liens, i.e., “ the first in time is the first in right
Such a rule, if accepted now, would adversely affect the credit rating of all municipal bonds which are marketed on the assumption that local taxes are a first lien on the land within the municipality. It would also impair the borrowing power of municipalities because it makes the municipality liable for the personal debts a tax delinquent property owner owes to the Federal Government. Finally, it would cloud the title of properties which the municipalities have resold after acquisition through tax lien foreclosures.
The logic of the respondent appears to be as circular as the type of priority that it would have this court stamp with approval. The procedure that it proposes is novel to this State. Were local taxes not owing upon the land, the United States could not, through its own admissions, compel the creation of a surplus in which its lien would share with the judgment creditors. Is it logical that the Federal Government should be entitled to compel the mortgagee to treat the amount of real estate taxes subsequently accruing as a surplus to be applied toward payment of the Federal lien?
To accede to this attempt to foist the personal debts of the mortgagor owing to the United States on the mortgagee is to agree to the imposition of an indirect tax on savings banks who have invested billions of dollars in mortgages and on the savings of our citizens invested in mortgages which have been accorded a preference even under Federal law (U. S. Code, tit. 26, § 6323, subd. [a]). If the preference is to be whittled down, it should be done explicitly by a statute enacted by the representatives of the States in the national Congress and not by the courts.
The direction in the resettled judgment of foreclosure that the Referee should pay the real estate taxes, assessments and water rates out of the proceeds of the sale as expenses of the sale is not only in conformity with State law (Civ. Prac. Act, § 1087), but is also in keeping with the preference conferred on the mortgagee by State and Federal law protecting ‘ ‘ all those rights which the Congress must have known the mortgagee commonly and usually possesses ” (United States v. Bond, 279 F. 2d 837, 851, supra). Being the proper procedure of this *44 State, the resettled judgment of foreclosure of October 20, 1960 should be affirmed.
The judgment of the Appellate Division, entered June 13, 1961, should be reversed, and the judgment of the County Court, Erie County, entered October 20,1960, reinstated, without costs.

. (Civ. Prae. Act, § 1087)—“ Where a judgment rendered in an action to foreclose a mortgage upon real property directs a sale of the real property, the officer making the sale must pay out of the proceeds, unless the judgment otherwise directs, all taxes, assessments and water rates which are liens upon the property sold and redeem the property sold from any sales for unpaid taxes, assessments or water rates, which have not apparently become absolute. The sums necessary to make those payments and redemptions are deemed expenses of the sale within the meaning of that expression as used in any provision of this article. The provisions of this section shall not apply to any judgment in an action wherein any municipal corporation of this state is the plaintiff and the purchaser at the foreclosure sale thereunder.”

. The Federal liens, amounting to $40,403.34 attached to the property between April 11,1949 and November 28,1951 (Exhibit B to complaint of United States). The local taxes paid out of the proceeds of the sale were county, township and school taxes for the period 1952-1955 in the amount of $5,756.90 (Transcript of Record, p. 22).