**C. E. H. McDONNELL, Successor, Trustee to Murray Ferguson, Trustee Under Chapter X Reorganization Proceeding for Equitable Plan Company, Debtor,**

**v.**

**BUCKS COUNTY FARMS, INC.**

**Civ. A. No. 27004.**

United States District Court
E. D. Pennsylvania.

April 13, 1962.

James B. Doak, Nathan Lavine, Philadelphia, Pa., for receivers.

Isadore A. Shrager, Philadelphia, Pa., for Commonwealth of Pennsylvania.

Drew J. T. O'Keefe, U. S. Atty., Joseph R. Ritchie, Jr., Asst. U. S. Atty., Philadelphia, Pa., for United States of America.

JOHN W. LORD, Jr., District Judge.

This phase of a Chapter X Reorganization is another episode in the process of unravelling the tangles which Lowell Birrell left here when he departed for South America. In addition to difficult questions of fact, the present issue involves a difficult legal problem—since the Commonwealth of Pennsylvania and the United States of America are each seeking the same fund, part of the proceeds of a sale of realty.

The realty of the Corporation has been sold to a private purchaser and the funds await distribution. The land comprising Bucks County Farms, Inc. had been collected through the purchase from individuals of smaller parcels. At the time of transfer to Bucks County Farms, Inc. there was a failure to pay the correct realty transfer tax resulting in the Commonwealth's re-assessment of tax due. On December 23, 1958, the Corporation executed a mortgage in favor of the United States to secure a renegotiation claim which the Government had against the sole stockholder of the Corporation, L. L. Constantin & Co. This mortgage provided that it would be subordinate to

the existing mortgages on the realty. The United States did not record this mortgage until December 21, 1959, after equity receivers had been appointed by this Court.

The receivers, on May 26, 1961, petitioned this Court for confirmation of a private sale of the Corporation's realty. The agreement of sale provided for a clear title or one that would be insured by a Title Company. The petition recited that the delinquency in Commonwealth taxes would be satisfied upon settlement.

The Title Company listed as objections to insuring the title the deficiencies in Commonwealth transfer taxes. Accordingly, the Title Company now holds in escrow an amount sufficient for payment. Further, the receivers have negotiated with the Commonwealth and have achieved a settlement at an amount less than that originally insisted upon by the Commonwealth. Thereupon, the receivers petitioned this Court for approval to compromise the claim of the Commonwealth.

The United States opposes this motion insisting that no payments be made except after strict proof that the claim has existed as a lien prior to the time when the Corporation executed the mortgage in favor of the United States.

The legal issue involved here presents a facet of the critical balance of national and state interests. The United States, holders of a junior mortgage, seek to restrain the payment of delinquent realty transfer taxes to the Commonwealth. The receivers, on the other hand, seek the aid of this Court to extricate themselves from the embarrassing position in which they find themselves. They have pledged to deliver good title to the realty, but the failure to pay the Commonwealth taxes will prevent fulfillment.

■ This Court in deciding the instant case must determine which law it is to apply—state or federal. It is true that the federal courts should fashion the governing law according to their own standards. Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L. Ed. 838 (1943); United States v. Allegheny County, 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209 (1944). However, the federal court is not foreclosed from applying state law when it has especial merit. This Court decides in the instant case that the state statutes should be followed.

In United States v. Brosnan, 363 U.S. 237, 80 S.Ct. 1108, 4 L.Ed.2d 1192 (1960), the Supreme Court had before it for decision the peculiar Pennsylvania law which extinguished junior liens where a senior lien was enforced through a confession of judgment clause. The United States was the holder of a junior lien which the Court felt was divested even though it was the sovereign. The Court said (p. 240, 80 S.Ct. p. 1111, 4 L.Ed.2d 1192):

" * * * because federal liens intrude upon relationships traditionally governed by state law, it is inevitable that the Court, in developing the federal law defining the incidents of such liens, should often be called upon to determine whether, as a matter of federal policy, local policy should be adopted as the governing federal law, or whether a uniform nationwide federal rule should be formulated."

Further, the Court decided that where the title to realty will be affected, state law should be applied in instances such as in the instant case (p. 241, 80 S.Ct. p. 1111, 4 L.Ed.2d 1192):

" * * * when Congress resorted to the use of liens, it came into an area of complex property relationships long since settled and regulated by state law. We believe that, so far as this Court is concerned, the need for uniformity in this instance is outweighed by severe dislocation to local property relationships which would result from our disregarding state procedures. * * * "

The New York Court of Appeals in Buffalo Savings Bank v. Victory, 226 N. Y.S.2d 382, 181 N.E.2d 413, has interpreted Brosnan as providing for the payment of local taxes which attach to the

land prior to the satisfaction of federal liens. We think that this is perfectly sound for if, as here, state law will prevent property dislocations, the whole of the local policy must be applied.

The Pennsylvania statute, 72 P.S. § 1401, requires that where there is a judicial sale of property the taxes due the Commonwealth must be paid before any other claim is satisfied. This Commonwealth lien will remain as a clog on the title unless the receivers are permitted to compromise the tax claim. They will be unable to pass good title to the land which will be in violation of the agreement of sale.

The United States argues that the rights of the United States are not to be determined by state law. Clearfield Trust Co. v. United States, supra; United States v. Allegheny County, supra. These cases are very important in the body of federal law, but inapposite here. In Clearfield the Court had before it the problem of what law to apply where a Treasury check was purloined and cashed by one other than the payee. There the Supreme Court held that a uniform federal rule of law was to be applied where the funds of the United States would be jeopardized by differing commercial practices among the several states. In Allegheny the property of the United States was included in a municipal assessment for taxes. The Court held that where a federal activity is taxed the federal law should be applied. In the instant case, however, we are concerned with the clear title of realty long governed by state statutes and procedures.

 Accordingly, this Court feels it must follow the ruling of Brosnan, supra, and apply the state law as the federal law to be applied in this case.

AND NOW, for all the foregoing reasons, it is the ruling of this Court that the receivers be allowed to compromise the claim of the Commonwealth of Pennsylvania for delinquent realty transfer taxes, and it is so ordered.