**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Mary DWYER; William Dwyer; Armour Fertilizer Works Division of Armour & Company; Gregory-Doyle, Inc.; Catherine E. Beck; Alexander B. Beck; Stephen Huggard; Lauchner Motors Inc.; New York State Tax Commission; Sadie Schwartz; Joseph Harris; Constance Dosch; County of Nassau; Town of Oyster Bay; Board of Education, Union Free School District No. 17, Town of Oyster Bay; Hicksville Water District; John Doe; and Richard Roe; the names of the last two defendants being fictitious, their true names being unknown to plaintiff, the persons intended being tenants, occupants or other persons, if any, having or claiming some interest in the premises under foreclosure, Defendants.**

**Civ. A. No. 62–C–331.**

United States District Court
E. D. New York.

Oct. 18, 1962.

Joseph P. Hoey, U. S. Atty., by Kalman V. Gallop, Asst. U. S. Atty., for plaintiff.

Paul J. Leach, Mineola, for defendant Constance Dosch.

Burlant & Catalano, Hicksville, for defendant Board of Education, Union Free School District No. 17, Town of Oyster Bay.

Bertram Harnett, Mineola, for County of Nassau.

RAYFIEL, District Judge.

On June 30, 1953 the District Director of Internal Revenue in Brooklyn, New

---

York, whose jurisdiction included Nassau County, wherein the defendant Mary Dwyer resided, made an assessment against her in the sum of $116,132.60 covering the unpaid balance of her income taxes for the years 1946, 1947 and 1948, together with interest and penalties. Thereafter, on November 20, 1953, notice of said tax lien was filed by the United States against the defendant taxpayer in the office of the County Clerk of Nassau County, New York, in the sum of $152,526.90, which did not reflect payments thereon previously made by her, aggregating $36,394.30.

By agreement between the taxpayer and the District Director (she signed Tax Collection Waiver Form 900) the period during which collection of the tax could be made was extended to December 31, 1964.

On October 6, 1961 the said District Director filed another tax lien against her in the office of said County Clerk in the sum of $733.52, covering unpaid income taxes, penalties and interest for the year 1953.

At the time the District Director filed the first tax lien the taxpayer owned certain real property in Nassau County described as Lots 12, 42 to 46 inclusive, 156 and 259. Pursuant to the applicable provisions of the Nassau County Administrative Code, Laws 1939, c. 272, School taxes were levied against the said lots for the year 1957–1958, and Town taxes for the year 1958. The taxpayer defaulted in the payment thereof on Lots 42 to 45, inclusive, 156 and 259. By reason of such default the Treasurer of Nassau County caused those lots to be included in a list of lands covered by a notice of the proposed sale of Nassau County tax liens, published as required by said Administrative Code. On December 1, 1958 the County Treasurer sold the tax lien on the aforesaid lots to the defendant Sadie Schwartz at public auction. The property not having been redeemed from said tax lien during the period provided by law, the Treasurer of Nassau County conveyed the said lots 42 to 45, inclusive, 156 and 259 to the defendant Sadie Schwartz on January 5, 1960.

Thereafter School taxes were levied against said Lots for the year 1960–1961 and Town taxes for the year 1961. Again there was a default in the payment of the taxes and the resulting tax lien was sold at public auction to the defendant Joseph Harris.

School taxes were levied against Lot 12 for 1960–1961 and Town taxes for 1961. The taxpayer again defaulted and the tax lien thereon was sold at public auction to the defendant Constance Dosch.

On March 30, 1962 the United States of America commenced this action under Sections 7401, 7402(a) and 7403 of Title 26 U.S.Code, and named as parties defendant, *inter alia*, the taxpayer, the aforementioned Sadie Schwartz, Joseph Harris, and Constance Dosch, and the County of Nassau. The taxpayer and the defendants Sadie Schwartz and Joseph Harris defaulted in pleading. The defendant Constance Dosch appeared by attorney. The County of Nassau appeared and answered the complaint. The other defendants named either defaulted in pleading or appeared and waived notice of all proceedings except those relating to the disposition of surplus moneys.

The United States now makes this motion (1) for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C. and (2) to amend the title of the action by striking therefrom the name "John Doe", a tenant in possession, and substituting therefor Marcella Dwyer, the true name of said defendant.

The only party which appeared in opposition to the motion is the County of Nassau. It does not oppose the application to amend the title. It does, however, oppose the motion for summary judgment, particularly that portion thereof which seeks an order adjudging the tax liens of the United States to be "superior in time and rank to that of any adverse claim."

It contends that the real property taxes assessed against the lots owned by the taxpayer are entitled to priority over all the federal tax liens filed against the property, since, under the law of the State of New York, the former are considered "Expenses of the sale." It cites as authority for its position Sections 1060, 1061, 1062, 1082 and 1087 of the New York Civil Practice Act. Sections 1060, 1061 and 1062 provide for the disposition of the proceeds of a sale in a partition action and Section 1062 directs that the officer making the sale must pay out of the proceeds thereof "all taxes, assessments and water rates, which are liens upon the property sold * * *. The sums necessary to make those payments and redemptions *are deemed expenses of the sale.*" (Emphasis mine). Sections 1082 and 1087 provide for the disposition of the proceeds of a sale in an action to foreclose a mortgage, Section 1087 containing substantially the same language as Section 1062, supra, respecting the payment of real estate taxes, etc.

The County contends that the case at bar is analogous to an action to foreclose a mortgage, and that *its* after-accrued taxes are "expenses of the sale" and must be paid out of the proceeds of the sale of the property *before* the tax lien of the United States may be paid.

In its brief the County lays great stress on the case of Buffalo Savings Bank v. Victory, 11 N.Y.2d 31, 226 N.Y.S.2d 382, 181 N.E.2d 413, decided by the Court of Appeals of the State of New York on February 22, 1962. That was an action to foreclose a mortgage which had been recorded prior to the filing of a lien by the United States for unpaid income taxes. The Court there held that local real estate taxes and assessments which accrued subsequent to the filing of the federal tax lien, but which, under New York Law (Section 1087, supra) were superior to the mortgage debt, were entitled to payment, as expenses of the sale, prior to the federal tax lien. It held, further, that the latter could be paid only out of the surplus, if any, remaining after the

payment of the mortgage debt and the expenses of the sale.

The Buffalo case, supra, is clearly inapposite. A mortgage recorded prior to the filing of a federal tax lien is given priority thereover under Section 6323 of Title 26 United States Code, which provides that " * * * the lien imposed by section 6321 (lien in favor of the Government for unpaid taxes) *shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the Secretary or his delegate —*" (Emphasis and matter in parenthesis added).

The New York Court of Appeals reasoned that since the local taxes were superior to the lien of the mortgage they were also superior to the federal tax lien. It said at page 387, of 226 N.Y.S.2d, "Here we are faced with the true parties in interest—the mortgagee and the Federal Government. Under New York law no funds are deemed surplus until the expenses of the sale, the costs of the action and the amount of the foreclosed mortgage debt plus interest have been fully paid. (Civ.Prac.Act, § 1082). The procedure in this State requires the officer conducting the foreclosure sale to pay out of the proceeds all taxes, assessments and water rates which are liens on the property, unless the judgment directs otherwise. *These payments are expenses of the sale by statute.* Therefore, the question of what, if any, financial interest the mortgagor-taxpayer had on which the Federal Government had a lien can only be determined under the State law after the foreclosure sale." (Emphasis added).

That reasoning would appear to be inapplicable to the case at bar. This is not an action to foreclose a mortgage. The United States is foreclosing its tax liens, one of which, concededly, was filed prior to the accrual of the local taxes. The Government claims that its liens have priority over those of the County.

■ The case of the United States v. City of New Britain, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520, is, in my opinion,

dispositive of the case at bar. It decided that the priority of liens was to be determined by the doctrine of "the first in time is the first in right." Mr. Justice Minton, writing for the Court, stated the principle (at page 85, 74 S.Ct. at page 370) as follows: "We believe that priority of these statutory liens is determined by another principle of law, namely, 'the first in time is the first in right.' As stated by Chief Justice Marshal[ll] in Rankin v. Scott [12 Wheat. 177, 6 L.Ed. 592] supra:

" 'The principle is believed to be universal, that a prior lien gives a prior claim, which is entitled to prior satisfaction, out of the subject it binds, unless the lien be intrinsically defective, or be displaced by some act of the party holding it, which shall postpone him in a Court of law or equity to a subsequent claimant.' 12 Wheat., at [page] 179 [6 L.Ed. 592].

"This principle is widely accepted and applied in the absence of legislation to the contrary. 33 Am.Jur., Liens, § 33; 53 C.J.S., Liens, § 10b. We think that Congress had this cardinal rule in mind when it enacted § 3670, a schedule of priority not being set forth therein. *Thus, the priority of each statutory lien contested here must depend on the time it attached to the property in question and became choate.*" (Emphasis added.)

Applying the doctrine of "the first in time is the first in right" to the case at bar, I find that the tax lien filed by the United States in the office of the County Clerk of Nassau County on November 20, 1953 is prior to the liens of School and Town taxes for 1957–1958, 1958, 1960–1961 and 1961 which accrued against the lots owned by the taxpayer and is entitled to priority thereover.

As to the tax lien filed by the United States on October 6, 1961, however, the local taxes, having accrued prior thereto, are entitled to priority over *that* federal tax lien.

The motion is granted as indicated. Settle order on notice.