John P. Donohqe, J.
This petition for an order declaring Lot 1A, Block 649 on the assessment rolls of the City of New Rochelle exempt from tax is granted.
In this proceeding, the petitioner seeks, under subdivision 1 of section 406 of the Real Property Tax Law and section 213 of the Westchester County Administrative Code (L. 1948, eh. 852, as amd.) to exempt from real property tax by the City of New Rochelle, and the Board of Education of New Rochelle, a *1048 section of Glen Island Park generally known as. Glen Island Casino for the assessment years 1963 and 1964.
Glen Island, a section of the City of New Rochelle, attached to the mainland solely by a drawbridge, has been owned by the County of Westchester since 1923, and is operated principally as a park under the control of the Westchester County Department of Parks, Recreation and Conservation. There is a large, two-story building at the northeast tip of the island which has been known for many years as Glen Island Casino. The Casino overlooks the nearby waters of Long Island Sound, Port Slocum and other natural and man-made features. Just to leeward of the Casino building there is a parking area where patrons of the Casino may park their cars while using its facilities.
The entire park contains over 100 acres of land. It is available to persons holding Westchester County resident permits from May 1 until September 30, and the balance of the year to anyone, when open. No permit is required at any time of persons who only visit the Casino. The park facilities include bathing beaches and picnic grounds, walks and tennis courts, which are open from June until September. During the seasons from October until May, the park is open during the day to the general public and is visited daily by an average number of 15 or 20 people. At these times, however, the park closes at night, except for the Casino and the road leading to it, when it is open for some prearranged function or for its usual Saturday night trade. The roads other than those leading to the Casino are unplowed when snow falls, and those leading to bathing areas are closed. Then, unless some function is being held at the Casino, the bridge is barricaded, as it was found to be on numerous occasions in December, 1964 by witnesses who observed it.
The Casino itself contains on the first floor a lounge and bar that accommodates 150 people with a dance floor, or 200 without, and in addition a public bar and an approach corridor, with a view of Long Island 'Sound, that' accommodates 60 people. The second floor includes an enclosed porch with a capacity of 100 people and a main dining room, 60 by 120 feet in size, without interior vertical support, with space for 800 people with a dance floor or 1,000 people without a dance floor. This large room has a bandstand, a dais, a public address system and a view of Long Island Sound.
The Casino has been operated for many years by a lessee-concessionaire who runs not only the facilities of the Casino building, but refreshment concessions in the park as well, from the kitchens of the main building. The concessionaire carries on his functions under a formal lease with Westchester County, the *1049 terms of which provide for a payment to the county of 7%% of the gross receipts of his Casino operation, with a minimum of $18,000 per year. During 1963, the gross revenues were $260,955.20 and the county received $18,726.23. In 1964, restaurant revenues were $298,781.30, and the county received $22,408.60 in rents.
During the week, Glen Island Casino is open only for prearranged functions. On Saturdays, it is open to the general public whether or not there are any prearranged gatherings. However, when some prearranged function is in progress the facilities, other than those being used for such functions, are open to the public. It has not appeared on the trial of these issues how many persons, other than those attending prearranged gatherings, use any facilities of the Casino, nor has it been shown how many, if any, of the users of the park itself use its facilities. During 1963, the Casino was open 165 days, and in 1964, 164 days. In 1963, there were 34 banquets on Saturdays, and the 'Casino was open to the public on 48 Saturdays. In 1964, there were 40 Saturday banquets and 49 Saturdays open to the public.
The average number of persons at banquets in the years 1963 and 1964 was 300 to 400. There were about 15 per year that attracted 600 people, and not more than 3 that were attended by 1,000 people.
These statistics do not bear out the chief contention of the petitioners that Glen Island Casino is the ‘ ‘ medium through which all of the purposes ” of Glen Island Park are accomplished. However widespread the popularity of this restaurant may be, and whatever crowds its contracted functions draw, there is no evidence in the record that anyone has used the Casino in connection with the park or has selected that restaurant for any reasons other than those that guide public preferences for places of entertainment and amusement generally. The “ adjunct ” theory, which has been the subject of testimony of- expert witnesses on the trial of this proceeding, remains unsupported by fact.
The petitioner adduced ample testimony that the facilities of Glen Island Casino are unique. Its location in a park setting, overlooking natural beauty, its large capacity and its availability for gathering on a contract basis have been made clear. But it has also been shown that Westchester Community Center at White Plains can offer facilities of greater size and that a restaurant in the City of New Rochelle has facilities nearby as commodious.
*1050 The substance of the petitioner’s argument is, apparently, that Glen Island Casino qualifies as a public function because there is a public need for it. The statistics brought forward in support of that view, indicate instead that it is in a superior competitive position to privately owned restaurants which are in the business of offering banquet facilities to groups of people on a prearranged basis.
The court has been made aware of the decisions in William v. Gallatin (229 N. Y. 248) and in 795 Fifth Ave. Corp. v. City of New York (40 Misc 2d 183). In both cases, there was proof of use of the restaurants for which exemption was claimed as adjuncts to the parks they served. In this case there is none.
As the record shows, Glen Island Casino operates as a place of public gathering for people who come into the park only to use the Casino’s facilities. Its operations are independent of the operation of the park. It could function just as well if it were not on park grounds.
There is no merit to the argument that section 220 of the Westchester County Administrative Code, making “Any piece or parcel of land * * * acquired pursuant to this section * * * a part of the park” extends the exemption from real property tax to Glen Island Casino. This is a control and management provision and should not be read to extend the doctrine of exemption beyond its intended purpose. Its stated purpose is to provide for control, maintenance and improvement.
The petitioner argues that section 213 of the Westchester County Administrative Code (L. 1961, ch. 679, art. 9-B, § 213) exempts county property under the jurisdiction of the Department of Parks, Recreation and Conservation by reason of ownership alone, without regard to use. In support of that contention, the petitioner cites authorities from several other jurisdictions, including California, Kansas, Colorado and Michigan. In each of the cases cited, the exemption claimed on the sole basis of government ownership apparently was a general exemption which had no relation to purpose. This is not true of the special statute raised here. .Section 213 of the code is a part of and has direct relation to the law creating a Department of Parks, Recreation and Conservation. Section 211 defines parks and section 212 creates the power in a Commissioner to establish, control and regulate parks and defines park purposes. Those purposes are public health, interest, pleasure, recreation, athletics or amusement. Section 213 declares exempt from taxes and assessments “All real estate and interests therein, vested in the county or required for the purposes of this article ”. Thus, the declaration of exemption is dependent upon *1051 the dedication of property to park uses and purposes and it is erroneous to say that ownership is the sole criterion of exemption. If such were the case, the words “ vested in the county ” might, by the process of divorcing such vesting from park functions, be construed to exempt all property belonging to the county from the burden of taxation, regardless of the use to which it might be put.
Because the exempt or nonexempt status of the Glen Island Casino premises depends upon their use for park purposes, the criteria of taxability expressed in Town of Harrison v. County of Westchester (13 N Y 2d 258) and County of Herkimer v. Village of Herkimer (251 App. Div. 126, affd. 279 N. Y. 560) are now applied.
The county argues that the instant case is distinguishable from Town of Harrison v. County of Westchester, cited above on the basis that the airport hangars in that case were set aside for exclusive private use, whereas Glen Island Casino is open to public use. The distinction sought is not substantial or meritorious and it oversimplifies the holding of the Town of Harrison case. In that case, as a matter of fact, the county contended that (p. 264) “ ‘ the space in hangars is available to anyone for legitimate airport purposes upon request provided the space is available ’ and that, in fact, such space has occasionally been made available, at least during inclement weather, to other aircraft, including those belonging to the one regularly scheduled public carrier airline which uses the airport facilities. ” The court then went on to say (p. 264) that: “This occasional public use, however, being no more than incidental to the private use of the hangars and, beyond that, entirely dependent upon the pleasure and convenience of the corporate bodies which have exclusive control of those premises, does not qualify the property for tax exemption. ’ ’
The similarity between the cases is clear. In the case here presented, the private concessionaire is guided by his own policy of opening during the week only for privately contracted functions and of opening on Saturdays to the public, regardless of the occurrence of such functions. The poAver to regulate the days and hours of operation was reserved to the Commissioner by the terms of the license agreement. But the Commissioner testified that he imposed no rules in that regard because he approved of the present method of operation. In fact, it was the concessionaire’s operating policy which determined the conduct of the business.
The primary use of Glen Island Casino as a place Avhere groups may gather to hold events requiring a large space does *1052 not of itself render the restaurant “ occupied, employed or availed of for the benefit of the Community at large.” It is not regulated or controlled in any significant way by any agency or department of the county. Its use by the public does not differ in any substantial way from the public use of large restaurants everywhere. The arrangements for its use are made on the basis of separate consultation and contract. By no stretch of the imagination can these social gatherings be deemed functions in the public interest, any more than those which might be held in any large restaurant or caterer’s establishment. There is lacking that possession and enjoyment by the public or public agencies which were applied as the test in the Harrison and Herkimer cases. There are present the elements of exclusive and long-term control by a private concessionaire and use of the promises solely for his patrons and guests, which were the tests of taxability in the Harrison case. The Court of Appeals in that case quoted (p. 264) from a Pennsylvania opinion, which is applicable here too, saying “ ‘ property, even though owned by a body ordinarily tax exempt, is taxable if used by it for commercial purposes, or if rented to a lessee for a purely business enterprise and not a public use ’ ”. The operator of Grlen Island Casino cannot distinguish his business from any other restaurant catering to large gatherings, except by the size and setting of his establishment and the fact that he is open to the public less often than most restaurants.
Notwithstanding the failure of the premises used for Casino purposes to meet the standard of dedication to public use, the court noted, from the exhibits and in personally viewing the premises, that some property which lies between the parking lot and Long Island Sound has no connection with the Casino. This land, which includes a minor roadway, is included in the separate assessment of Lot 1A as taxable property. It is clearly dedicated to general park uses and should not have been included in taxable property.
The erroneous inclusion of nontaxable property with taxable property renders the entire assessment invalid. In the words of the Appellate Division in Matter of Wadhams (249 App. Div. 271, 279); “ Where an assessment sought to bo enforced against a property owner is made up of different items or elements, all blended together, some of which are legal and others illegal, the whole assessment is void. It is either all good or all bad.” County of Westchester v. Croton-on-Hudson (19 Misc 2d 512) is in accord.