■ In the Matter of COUNTY TENNIS CLUB OF WESTCHESTER, INC., Appellant, v OFFICE OF THE ASSESSOR FOR THE VILLAGE OF SCARSDALE et al., Respondents. [691 NYS2d 77] —In a proceeding pursuant to CPLR article 78 to review, inter alia, a determination of the Board of Assessment Review For The Village of Scarsdale, dated September 12, 1997, removing the property leased by the petitioner from exempt status and placing it on

the 1997 assessment roll, the petitioner appeals from a judgment of the Supreme Court, Westchester County (Leavitt, J.), entered April 29, 1998, which denied the petition to restore the property's tax exempt status.

Ordered that the judgment is affirmed, with costs.

For 88 years the petitioner has run a tennis club on two acres of land that it leases from the County of Westchester. In 1997 the Village of Scarsdale, where the club is located, announced its intention to assess property taxes against the club for the first time. The club opposed the assessment, arguing that it was entitled to a complete exemption from property taxes because its facilities were held for a public use, and because the club did not operate for profit. The municipal taxing officials ruled against the club, and the court denied its petition pursuant to CPLR article 78, finding that the club's maintenance of a membership limit in conjunction with a renewal policy favoring members and their children meant that the facility was not being held for a public use. We affirm.

The Real Property Tax Law provides that "[r]eal property owned by a municipal corporation within its corporate limits held for a public use shall be exempt from taxation" (Real Property Tax Law § 406 [1]). "Although what comprises 'a public use' within the meaning of the statute 'has never been defined with exactitude' and 'must necessarily depend upon the peculiar circumstances of each case', it has been said, and most appropriately, that 'Held for a public use * * * means that the property should be occupied, employed, or availed of, by and for the benefit of the community at large, and implies a possession, occupation and enjoyment by the public'" (*Town of Harrison v County of Westchester,* 13 NY2d 258, 263, quoting *County of Herkimer v Village of Herkimer,* 251 App Div 126, 128, *affd* 279 NY 560).

The petitioner here has a membership cap of 225 persons. However, when a child of a "family" member reaches 22, he is automatically accorded "intermediate" membership (if he wants it and pays his dues). Similarly, when an "intermediate" member reaches the age of 35 he need only apply to be accepted as an "individual," "limited" or new "family" member. In other words, the club is structured in such a way that the existing membership can theoretically swell to fill all available slots, since the 225-person ceiling does not appear to apply to limit renewals and roll-overs, but only to bar new applicants attempting to join (*see, e.g., Matter of Chemung County v Hartman,* 24 AD2d 1063). Indeed, the 1996 roster shows a membership for that year of 254. In addition, the record demonstrates

that the County of Westchester has nothing to do with the operation of County Tennis, which is managed essentially by its Board of Governors. In addition to controlling the day-to-day functioning of the club, the Board of Governors approves or disapproves all membership applications. Accordingly, County Tennis is not being held for "the benefit of the community at large", nor is it being possessed, occupied, and enjoyed by the citizens of Westchester County generally (*see, e.g., Matter of County of Westchester v Rizzardi,* 46 Misc 2d 1047). The petitioner's application to restore the property's tax-exempt status was therefore properly denied. Bracken, J. P., Santucci, McGinity and Feuerstein, JJ., concur.