In the Matter of the Application of the Estate of W. GRANT WADHAMS for a Refund on Tax Sale Certificate No. 197 of the Erie County Tax Sale of 1926.

Estate of W. GRANT WADHAMS and the CITY OF BUFFALO, Appellants; COUNTY OF ERIE and SCHOOL DISTRICT No. 3 OF THE TOWN OF WEST SENECA, Respondents.

Fourth Department, December 23, 1936.

*J. Neil Mahoney*, for the petitioner, appellant.

*Bertha J. Strootman, Assistant Corporation Counsel*, for the appellant City of Buffalo.

*Maurice J. Rumizen, Deputy County Attorney*, for the respondent County of Erie.

*William J. Daetsch*, for the respondent School District No. 3 of the Town of West Seneca.

EDGCOMB, J. The dispute between the parties to this appeal centers around the right of a purchaser of real property upon a tax sale to a refund of the total amount of his bid, because the tax was erroneous and void.

The property in question is situated in the town of West Seneca, Erie county, and is owned by the city of Buffalo. It is used, along with adjacent lands within the city limits, for a public park. It was sold at public sale for the unpaid county and State taxes for the year 1926, and was bid in by W. Grant Wadhams, and a certificate of sale was issued to him.

The amount of the unpaid tax, with interest and expenses at the date of the sale, was $1,700.83, and is made up of various items, including the portion due for State, county and town expenses, the amount of a returned school tax, and special taxes levied for distinct purposes in special districts of the town.

Application for a refund was first made to the board of supervisors of Erie county, and was denied by that body. Thereafter the city of Buffalo acknowledged the validity of certain of the district assessments, and other items, going to make up the total tax levied and assessed against the property, and paid the amount thereof, together with interest, to the purchaser on said sale. This left two items, one of $326.63, which represented the amount of the county and State taxes, and another of $273.07, the unpaid school taxes for school district No. 3 of said town for the year 1925. The school collector had returned this latter tax, and had been paid the amount thereof by the county treasurer, pursuant to the provisions of section 435 of the Education Law; the board of supervisors caused the amount of such tax, together with interest at the rate of seven per cent per annum, to be relevied upon the land in question,

in accordance with the procedure prescribed in section 436 of the Education Law. That item constituted a part of the general tax which was assessed against the property for the year 1926.

After the board of supervisors had denied relief, an application was made to the County Court of Erie county for an order requiring the county treasurer to refund to the estate of the purchaser the amount of the tax, together with interest and expenses, after due credit had been allowed for the payment made on account by the city of Buffalo. The court ordered the item of $326.63, the amount of the general State and county tax levied against the premises for the year 1926, to be returned, with interest, but denied the motion in so far as it related to the item of $273.07, the school tax levied by the board of trustees of school district No. 3 of said town, upon the ground that the court had no jurisdiction to pass upon the application for refund in connection therewith, but without prejudice to the rights of any one or more of the parties to renew such application upon the merits. Both the petitioner and the city of Buffalo, the owner of the property, appeal from this order.

While the Legislature has passed a special act (Chap. 135 of the Laws of 1884, as amd. by chap. 383 of the Laws of 1909) for the collection of taxes in Erie county and the sale of lands for unpaid taxes, the procedure therein outlined is similar to that prescribed by the general Tax Law of the State. Section 33 of the Erie county statute prescribes that, when there is no provision on the subject in the act itself, the general laws of the State in relation to the assessment and collection of taxes, particularly those relating to the refund of the purchase money and interest to the purchaser on a tax sale, shall, so far as applicable, govern and control.

Section 32 of the act provides that whenever a purchaser is unable to recover possession of the real property sold to him, because of an error or irregularity in the assessment, or in the levying of the tax, or of any proceeding for its collection, the board of supervisors " shall reimburse the purchase-money so paid with interest."

Section 56-a of the general Tax Law authorizes the board of supervisors of any county to correct a manifest clerical or other error in an assessment, and to refund to any person the amount collected from him on a tax erroneously or improperly assessed or levied. The same statute requires the board of supervisors to actually refund the amount of any such tax, which has been paid, upon the order of the County Court. This provision, in practically the same form, is found in section 16 of the County Law. Request for relief must first be made to the board of supervisors, and if succor is denied, application may then be made to the County

Court to compel the refund of an illegal tax which has been paid. (*Gilloren* v. *Board of Supervisors of Oneida County*, 9 App. Div. 631; *Matter of Buffalo Mutual Gas Light Co.*, 144 N. Y. 228, 233.) This practice was followed in the instant case.

No suggestion is made that the court did not have authority to order a refund of the $326.63 item. The court actually assumed jurisdiction of the proceeding to that extent without objection on the part of any one, and no appeal has been taken from that part of the order. The only question upon this appeal arises in relation to the judicial authority of the court to order a refund of the unpaid school taxes. I fail to see how any distinction can be made between the two items. I think that the whole matter was one which should have been passed upon by the court.

The method of the assessment and collection of taxes for school purposes is laid down in article 15 of the Education Law. While ample provision is made for the assessment of such taxes, no machinery is set up by which the district itself can force the collection of delinquent taxes by a sale of the property. All such machinery is within the control of the county, and is made available to compel the payment of a school tax. The collector of the district is required to make a return of all taxes levied upon the property within the school district which he has been unable to collect, and the county treasurer is directed to pay to the collector the amount of the unpaid tax. (Education Law, §§ 433, 435.) The board of supervisors must then cause that sum, with seven per cent in addition thereto, to be levied upon the lands upon which the same was imposed, which amount, when collected, is returned to the county treasurer to reimburse him for the moneys advanced to the school district. (Education Law, § 436.) These unpaid school taxes, when thus relevied upon the lands of a property owner, become a part and parcel of the county tax itself, and when collected become the property of the county. While in the assessment roll the various items going to make up the total amount of the general tax assessed against each taxpayer is separately stated, including the sum assessed for State, county and town purposes, exclusive of the highway tax, the sum designed for highway uses, the amount of the returned school tax, and the tax assessed for special purposes in the special districts within the town, if any, such as fire, water, health and lighting districts, the total of all these items is extended in the last column in the roll opposite the name of the taxpayer, and constitutes the amount of the tax to be paid by him, and the assessment roll, when the proper warrant is attached, becomes the tax roll of the tax district. (Tax Law, § 58.) The collector

is charged with the duty of collecting from the several persons named in the tax roll the sum mentioned in the last column extended opposite their names; not a part of that sum; not some specific item going to make up the total, but the entire amount of the tax. (Tax Law, § 59.) True, the disposition of the money which is raised by taxation may be made to different officials, if so prescribed by the statute, but the collection of the tax itself from the various taxpayers is one and an inseparable act, and is not done by piecemeal. There can be no division of the sum payable. After a school tax is returned as unpaid, and after the amount has been advanced to the school district by the county treasurer, it is relevied as a county tax by appropriate action of the board of supervisors, and is then collected as a part and parcel of the county tax itself. A person, whose school tax has been returned as unpaid, may pay such tax, together with interest, to the county treasurer at any time before the board of supervisors shall have directed the same to be relevied upon the property affected, but if he fails so to do the same identical proceedings are invoked to force collection of the amount as are provided by law in relation to the collection of the county taxes. (Education Law, §§ 437, 438.)

The county is legally bound to reimburse the school district for the amount of its uncollected school taxes. The direction to the county treasurer to pay the same from the county treasury is fixed and conclusive; it is not dependent upon the collection of the tax by the county. The sum is required to be paid out of moneys in the treasury which have been raised for contingent expenses, or for the purpose of paying the amount of taxes so returned unpaid, and if no money is available for such purpose the board of supervisors, at the time of levying said unpaid taxes, is required to pay the amount thereof which has been relevied " by voucher or draft on the county treasurer, in the same manner as other county charges are paid."

The payment of the amount of these uncollected taxes by the county treasurer to the collector does not constitute a payment of the tax itself. Taxpayers who fail and neglect to pay their just share of the cost of education in the district are not thus relieved of their obligation. Nor is the amount paid by a purchaser of the property upon the tax sale a payment of the tax itself. This distinction is pointed out in *Matter of Clementi* v. *Jackson* (92 N. Y. 591, at p. 594), and must be borne in mind throughout this discussion. The relevying of these unpaid school taxes by the board of supervisors as prescribed in section 436 of the Education Law is for the sole purpose of reimbursing the county for the amount advanced to the school district.

The county calls attention to the authority conferred upon the trustees of a school district to refund a tax unlawfully or erroneously assessed or collected, as provided in section 441 of the Education Law, and contends that this remedy is exclusive, and constitutes the sole power in relation to the cancellation, modification and refund of taxes assessed and levied for school purposes. This section prescribes as follows: " Whenever it shall be established to the satisfaction of the trustees or board of education of a school district that taxes for school purposes have been unlawfully or erroneously assessed, levied and collected during the preceding school year they shall refund to the person or persons who have paid such unlawful or erroneous taxes the amount thereof."

This statute does not apply here, and it is unnecessary to decide whether, if it did, it would be an exclusive remedy. The refund authorized by this provision is to be made to the one who has paid the amount of the erroneous tax during the preceding school year. As above pointed out, neither the advancement by the county treasurer to the school district of the amount of these delinquent taxes, nor the purchase of the property on the tax sale, and the payment of the purchase price by Mr. Wadhams, constitutes a payment of the tax. Moreover, the payments were not made " during the preceding school year."

The county further contends that, inasmuch as it has no power to charge back against the school district a tax which it has refunded as erroneous, the taxpayers of the entire county as a whole would be compelled to contribute to the support and maintenance of school district No. 3 of the town of West Seneca by such refund, which would bring about an unjust and inequitable result, by dragging in and compelling outsiders to defray a part of the expense of a school district which should be borne entirely by the inhabitants thereof. A similar argument was advanced in *Town of Amherst* v. *County of Erie* (260 N. Y. 361), where the county was required to raise and pay over to the town the amount of the town budget, irrespective of the fact that the collector of the town had been unable to collect sufficient taxes to pay the same, and also in *Matter of County of Oswego* v. *Foster* (262 N. Y. 439), where the city of Fulton was held legally bound to pay over to the county of Oswego the amount of the State and county taxes in full, although the city had not collected the same. It was held in these cases that the power of the Legislature in reference to the imposition and collection of taxes is complete and absolute, and is limited only by constitutional provisions. It is a question of clear legal duty as declared by the statute, and not one of equities between the different

tax districts. The Legislature alone has the right to determine, within its legitimate discretion, all questions respecting the imposition and collection of taxes. (*People ex rel. Clark* v. *Gilchrist*, 243 N. Y. 173, 185; *Elmhurst Fire Co.* v. *City of New York*, 213 id. 87, 89; *Gautier* v. *Ditmar*, 204 id. 20, 27; *People ex rel. Eisman* v. *Ronner*, 185 id. 285, 289.) Education is a governmental purpose, and the county is authorized to expend money for that end.

The respondents urge that the tax in question is valid on its face, and that there is no such manifest error as would authorize a refund of the tax.

It is very true, as stated in *Matter of Hermance* (71 N. Y. 481), that the provision of the statute which authorizes the correction of assessments and the refund of erroneous taxes was not intended to, and in fact does not subject all assessments to review, or permit a correction of all errors, but only those which are clear, apparent and manifest — those which are obvious from an examination of the assessment roll or return, and which require no extrinsic evidence to make clear.

While the proceedings which were had before the County Court on this motion do not appear in the record, and while the petition is not as full as it might be wished, the county frankly admits in its brief that upon the hearing in the County Court it " took the position that it was not opposed to a refund of so much of said certificate as is represented by the State and county tax." The court actually assumed jurisdiction of the proceeding in so far as it pertained to a part of the tax, and made an order refunding that portion. We have a binding adjudication, acquiesced in by all parties and not appealed from, that a portion of the tax was manifestly erroneous, and that it came within the statute requiring a refund. So far as any error in the assessment is concerned, it is difficult to imagine how there could be a mistake in one item and not in the other.

It cannot be successfully claimed that, because the city chose to separate the items which made up the entire tax, and to acknowledge and pay certain portions thereof, and because the petitioner was willing to accept part of what he considered was due him, the appellants are now estopped from denying the right of the respondents to separate the balance of this tax, and to accept one item and reject the other. Neither the county nor the school district has been lulled into a sense of security, or has acted in reliance on the conduct of the appellants. The doctrine of estoppel requires a consistency of conduct only when inconsistency would work substantial injury to the other party. No one has been misled or

injured by the payment of a part of this tax by the city. In fact the respondents have been benefited thereby, because the amount which the county is now called upon to account for and take care of is just so much less.

The unpaid portion of the tax, the refund of which is now sought, must, therefore, be treated in its entirety. Where an assessment sought to be enforced against a property owner is made up of different items or elements, all blended together, some of which are legal and others illegal, the whole assessment is void. It is either all good or all bad. The part which is wanting in good qualities, and which is defective, renders the whole imperfect and deficient. (*Poth* v. *Mayor, etc.*, 151 N. Y. 16, 19; *People* v. *Hagadorn*, 104 id. 516, 524; *Saranac Land & Timber Co.* v. *Roberts*, 125 App. Div. 333, 339; affd., 195 N. Y. 303; *Nehasane Park Assn.* v. *Lloyd*, 167 id. 431, 437.)

A part of the tax being concededly bad and erroneous, and having been so adjudicated in this very proceeding, and the tax being indivisible, the court should have treated both items alike. There should be a consistency in court decisions. Under these circumstances it is unnecessary to send the matter back to the court to pass upon the disputed item of this tax upon the merits. In reversing the portion of the order appealed from, we may properly grant the motion in its entirety.

The order so far as appealed from should be reversed on the law, with ten dollars costs and disbursements, and motion granted in so far as it was denied by the order appealed from, with ten dollars costs, to the end that the motion may now stand granted in its entirety.

All concur. Present — SEARS, P. J., EDGCOMB, THOMPSON, CROSBY and LEWIS, JJ.

Order so far as appealed from reversed on the law, with ten dollars costs and disbursements, and motion granted in so far as it was denied by the order appealed from, with ten dollars costs, to the end that the motion may now stand granted in its entirety.