**UNITED STATES of America,**

**v.**

**GENERAL DOUGLAS MacARTHUR SENIOR VILLAGE, INC., STATE OF NEW YORK, COUNTY OF NASSAU, et al., Defendants.**

**No. 71 C 1023.**

United States District Court,
E. D. New York.

Nov. 9, 1973.

Robert A. Morse, U. S. Atty., E. D. N. Y., for plaintiff.

Joseph Jaspan, County Atty. of Nassau County, Mineola, N. Y., for defendant County of Nassau.

Saul Horowitz, Corp. Counsel for the Village of Hempstead, Hempstead, N. Y., for defendant Village of Hempstead.

Howard E. Levitt, Town Atty., Town of Hempstead, Hempstead, N. Y., for defendant Town of Hempstead.

Gilbert Henoch, Hempstead, N. Y., for defendant School District No. 1.

Stanley Beals, Jericho, N. Y., for defendant Sadie Schwartz.

Schiffmacher, Rochford & Cullen, Great Neck, N. Y., for defendant D. C. R. Holding Corp.

Michael P. Gurlides, Mineola, N. Y., for defendants Henrietta Rand, Martha Barkus, Shirley Hershkowitz.

WEINSTEIN, District Judge.

Cross claimants purchased tax liens upon the property of General Douglas MacArthur Senior Village, Inc. from the County of Nassau and from a school district, village and town in that county. Within months of the purchase, the United States, as mortgagee of the MacArthur property, moved to foreclose because of a failure to pay taxes and local water charges in breach of the mortgage agreement. An effort by the municipalities and cross claimants to establish priority over the United States in the proceeds of the foreclosure was unsuccessful. *See* United States v. General Douglas MacArthur Senior Village, Inc., 337 F.Supp. 955 (E.D.N.Y.), rev'd. 470 F.2d 675 (2d Cir.), cert. denied, sub nom. County of Nassau et al. v. United States, 412 U.S. 922, 93 S.Ct. 2732, 37 L.Ed.2d 149 (1973).

Whether cross claimants are entitled to a refund of the money paid to the taxing authorities for the now worthless tax lien certificates is the question posed. Since there is no disputed question of fact, the matter is ripe for adjudication on the motions for summary judgment. Dressler v. Sandpiper, 331 F.2d 130 (2d Cir. 1964). Jurisdiction is not seriously questioned; all cross claims are so closely related to the main action as to be ancillary. *See, e. g.,* R. M. Smyth & Co. v. Chase National Bank of the City of New York, 291 F.2d 721, 724 (2d Cir. 1961); C. Wright, Federal Courts 353 (2d ed. 1970).

New York law governs this dispute. *Cf.* Aquilino v. United States, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960); United States v. Brosnan, 363 U.S. 237, 80 S.Ct. 1108, 4 L.Ed.2d 1192 (1960); Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Under that law, as indicated below, these purchasers of tax liens cannot recover from the local taxing authorities.

*Tax Liens in General*

Tax lien systems begin to operate when taxes are levied as a lien against the land of a delinquent taxpayer. *See, generally,* N.Y. Real Property Tax Law Art. XIV, McKinney's Consol.Laws, 49–A; 16 McQuillin, Municipal Corporations § 44.139 at 401 (3d ed. 1972); H. K. Allen, Collection of Delinquent Taxes by Recourse to the Taxed Property, 3 Law. & Contemporary Problems 397 (1936); Note, Tax Sale Law in New Jersey: A Re-examination, 26 Rutgers L.R. 266 (1973); Note, Marketable Title in New York State: Tax Deeds, 9 Syracuse L.R. 69, 70 (1957). In all states, the taxpayer enjoys a "redemption period" during which he can pay his taxes plus interest and penalties to remove the lien.

■ Taxing authorities may sell the liens to members of the public in the form of tax sale certificates. Selling certificates is justified on the ground that it provides the municipality with a source of immediate cash. H. K. Allen, Collection of Delinquent Taxes by Recourse to the Taxed Property, 3 Law and Contemporary Problems 397, 405 (1936). These certificates represent an "inchoate right to a conveyance of the real property [which] would mature only in the event that such [redemption] payment was not made." Blatnicky v. Ciancimino, 1 A.D.2d 383, 389, 151 N.Y. S.2d 267, 273 (2d Dept. 1956); H. K. Allen, *supra*, at 405.

### Tax Liens in Nassau County

Local government in Nassau County is dependent upon income derived primarily from taxation of real estate. The Nassau County Administrative Code (Laws of 1939, Chapter 272), title B Article 2, provides for collection of municipal taxes by the County Treasurer. It applies to all but village taxes, which are controlled by similar state provisions. N. Y. Real Property Tax Law Art. XIV.

Section 5–32.0 of the Code authorizes the Nassau County Treasurer to bring a plenary action for the amount of taxes due, together with penalties and interest. In the absence of such an election, section 5–33.0 requires the Treasurer to sell liens at an annual tax sale. The tax sale lists and notices of advertising normally encompass thousands of parcels of land described by a section, block and lot on the Nassau County Land and Tax Map and, if available, by the name of the owner of the real property as it appears on the tax books.

At the time of the sale, prospective purchasers bid for specific tax liens at a rate of interest and penalty as described in sections 5–39.0 and 5–40.0 of the Nassau County Administrative Code. The lowest interest rate bid wins. Lower rates benefit the taxpayer since it means he can redeem by paying less interest on overdue taxes.

Although they may be made at the maximum rate of ten percent for each six month period within which the tax remains unpaid after the sale, not to exceed 24 months, bids are normally much lower because of competition among investors. For example, the interest and penalty for the one MacArthur sale exhibited to the court was six percent.

■ When a bidder has successfully purchased a lien, he obtains a Certificate of Sale containing information descriptive of the parcel, the amount bid and, in accordance with section 5–41.0, "7. Such other information as the county treasurer shall deem. expedient." A reservation of priority rights of the sovereign is inserted in the County Certificate pursuant to paragraph 7. The printed legend, in type of the same size as the rest of the document reads: "All liens on property involved in this sale are *sold subject to . . . any and all superior tax liens of Sovereignties* and other Municipalities." (Emphasis supplied.) The United States is a sovereignty within the meaning of this certificate—though, of course, its priority arose from a mortgage rather than a tax assessment.

■ No objection was made to the form of certificate until after this action was commenced by the United States to enforce its priority. But even without such an express statement the reservation as to superior liens of sovereignties would have been implied under New York law. N.Y. Real Property Tax Law § 1020(1); Riverhead Estates Civic Association v. Gabron, 206 Misc. 405, 134 N.Y.S.2d 13 (Suffolk Co. Ct.1954); *cf*. Hannah v. Babylon Holding Corp., 28 N.Y.2d 89, 320 N.Y.S.2d 35, 268 N.E.2d 775 (1971).

### Lien Validity vs. Lien Priority

It is important at the outset to distinguish between lien validity and priority. A lien may prove worthless first, because the lien and therefore the resulting tax deed is invalid; or sec-

ond, because the priority of the lien is subordinate to a superior interest, leaving no equity to the inferior lien holder. Thus a lien may be valid and yet lack priority.

### Was the Lien Invalid?

█ Invalidity may result from many causes. The taxing authority may have assessed the wrong land, calculated too large a tax, or lacked the power to tax at all. Cross claimants urge lien invalidity on the ground that the local authorities lacked the power to tax because of the sovereignty of the United States. They are wrong. The municipalities did have the power to tax the MacArthur property. In this very case, the Court of Appeals wrote that the property "is not immune from local taxation . . . ." United States v. General Douglas MacArthur Senior Village, Inc., 470 F.2d 675, 680 (2d Cir.), cert. denied, sub nom. County of Nassau et al. v. United States, 412 U.S. 922, 93 S.Ct. 2732, 37 L.Ed.2d 149 (1973).

### Did the Taxing Authorities Warrant Priority?

█ The Court of Appeals for the Second Circuit held in favor of the priority of the federal mortgage over the tax lien, ruling that the local government could not enforce their liens "until the federal debt is satisfied." 470 F.2d at 680. These federal claims were worth more than the property, so that, unless priority was warranted, the tax lien certificates became worthless.

It is stipulated that there were no written or oral express warranties by any municipal official as to priority. Reliance is placed upon priority warranties implied from the law. After examining the statutes, the common law, and the equities of the marketplace, we can find no such warranties.

Cited in support of cross claimants' position are sections 1168 and 1464 of the New York Real Property Tax Law and section 5–54.0 of the Nassau County Administrative Code. But, in terms,

these provisions deal with presumptive evidence of the title of the purchaser, not priorities. For example, section 5–54.0 of the Nassau County Administrative Code provides in part:

> "Every such conveyance shall be attested by the County Treasurer and the seal of the County Treasurer shall be attached thereto. When so executed, the conveyance shall be presumptive evidence that:
>
> 1. The sale of the tax lien was regular.
>
> 2. All proceedings prior to such sale, including the assessing of the lands affected by such tax lien, were regular."

Section 5–68.0 of the Nassau County Administrative Code and the applicable provisions of section 1464 of the Real Property Tax Law of the State of New York cover warranties as to proper assessment, levying of tax and proceedings for collection of tax—issues of validity, not priority. For example, the Code reads in part:

> "5–68.0 REIMBURSEMENT FOR INVALID OR IRREGULAR CERTIFICATES OF SALE. a. When any holder of tax liens shall be unable to recover or retain possession of any real estate affected by the tax lien, by reason of any irregularity or error in:
>
> 1. The assessment of real property;
>
> 2. The levying of any tax thereon; or
>
> 3. The proceedings for the collection of any tax, the county treasurer, with the approval of the county comptroller, shall reimburse such holder. . . ." (Emphasis added.)

As already noted, there was no invalidation or irregularity here.

█ The legislative history of these statutes reinforces our conclusion. Tax deeds were once fragile property interests subject to destruction by a procedural defect or by an unnotified claimant's protest. These statutory provisions were adopted to avoid disputes about validity and to enhance the mar-

ketability of title to lands obtained through tax sales, but not to guarantee a profit to the purchasers. *See, e. g.,* Blatnicky v. Ciancimino, 1 A.D.2d 383, 151 N.Y.S.2d 267 (2d Dept. 1956); Note, Marketable Title in New York State: Tax Deeds, 9 Syracuse L.R. 69, 79 (1957); Note, The Current Status of Tax Titles: Remedial Legislation v. Due Process, 62 Harv.L.R. 93 (1948). New York has not enacted a protective statute covering priorities. Only when the statutory warranty of validity of the lien has been breached is the New York municipality obligated to return the taxes paid by the lien purchaser. *See, e. g.,* In re Estate of Wadhams, 249 App.Div. 271, 292 N.Y.S. 102 (4th Dept., 1936) (tax erroneous and void); Matter of Niagara County Treasurer, 52 N.Y. State Dept. Rep. 475 (Dept. Tax. and Fin. 1935) (illegal assessment); *Cf.* 2 N.Y. Ops. of State Comptroller 402 (1946); Informal Opinion of Attorney General on Invalid Tax Sale, 48 State Dept. Rep. 606 (1933); Ops. of Nassau Co. Attorney No. 3289 at 21724 (1962).

■■ Claimants can find no comfort in the common law. The law traditionally placed all risks upon the tax purchaser. At common law, he buys under the rule of caveat emptor.

> " . . . so far as the money paid for taxes is concerned, it is familiar law that a purchaser of a tax title takes all the chances. There is no warranty on the part of the state."

Hussman v. Durham, 165 U.S. 144, 150, 17 S.Ct. 253, 255, 41 L.Ed. 664 (1897).

*See also* Martin v. Barbour, 34 F. 701 (E.D.Ark.1888); 16 McQuillin, The Law of Municipal Corporations, § 44.172 at 473 (3d ed. 1972). "The Tax Sale Certificate," according to the Nassau County Attorney, "is held by the purchaser subject to the Rule of Caveat Emptor." Ops. of Nassau Co. Attorney No. 1382 at 7794 (1940). "Under the common law rules, [the purchaser] would get nothing unless he got the land itself." 4 Cooley, Taxation § 1553 at 3045 (4th ed. 1924).

In the absence of statutory provisions, the purchaser has no remedy for refund against the taxing authorities. *See, e. g.,* State v. Casteel, 110 Ind. 174, 11 N.E. 219 (1887); Harding v. Auditor-General, 136 Mich. 358, 99 N.W. 275 (1904); Norris v. Burt County, 56 Neb. 295, 76 N.W. 551 (1898).

Equities of the market place support the conclusions required by legal precedent. Economic risk—with the possibility of substantial gain or loss—is accepted and welcomed by those who bargain for tax liens. On the one hand, there is the possibility of gaining title to a valuable parcel for relatively small sums. But, on the other hand, changing circumstances can harm the lienholder's investment with no remedy against the taxing authorities. *Cf.* In re County of Nassau, 24 N.Y.2d 621, 301 N.Y.S.2d 564, 249 N.E.2d 426 (1969) (condemnation extinguished tax purchasers' right to title leaving only an equitable lien on the proceeds of condemnation).

In this action, claimants were in a better position than most lienholders. They had ample forewarning of the risks inherent in their transaction because the United States mortgage was a matter of public record at the time of purchase. The volume of case law holding federal claims superior to municipal claims should have alerted them to possible dangers. But, as businessmen, the claimants went ahead and sought the profit that is often the reward for bearing risks. Under the law of the market place, they must take the loss that is often the price for assuming risks.

*Conclusion*

Statutory and common law of New York as well as the law of the market place impose the risk of changing circumstances upon those who sought to gamble on, and profit from, changing circumstances—the lienholders. Their claims for a refund must be denied under applicable state law.

The rules of this case will undoubtedly make tax liens on property such as

MacArthur much less attractive. Adverse effects on municipalities and taxpayers can be expected. But power to rectify priorities lies with Congress and to create warranties with the New York Legislature.

The motion for summary judgment of the County, Town, Village and School District against the cross claimants is granted.

So ordered.