**UNITED STATES of America,**
**Plaintiff,**

v.

**GENERAL DOUGLAS MacARTHUR**
**SENIOR VILLAGE, INC., et al.,**
**Defendants-Appellees,**

**D.C.R. Holding Corp., et al., Defendants-**
**Appellants.**

**Nos. 23 to 25, Dockets 74-1065,**
**74-1066, and 74-1314.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 9, 1974.
Decided Nov. 11, 1974.

Stanley Beals, Jericho, N. Y., for defendant-appellant Schwartz.

John M. Farrell, Jr., Great Neck, N. Y. (Schiffmacher, Cullen, Rochford & Farrell, Great Neck, N. Y.), for defendant-appellant D. C. R. Holding Corp.

William S. Norden, Deputy County Atty. (Joseph Jaspan, County Atty. of Nassau County, Natale C. Tedone, Sr. Deputy County Atty., Mineola, N. Y., of counsel), for defendant-appellee County of Nassau.

Matthew Feinberg, Hempstead (Saul Horowitz, Corp. Counsel, Village of Hempstead, Hempstead, N. Y., of counsel), for defendant-appellee Village of Hempstead.

Michael P. Gurlides, Mineola, N. Y., on the brief for defendant-appellant Estate of David Rand.

John F. O'Shaughnessy, Town Atty. of the Town of Hempstead (Daniel P. McCarthy, Asst. Town Atty., of counsel), on the brief for defendant-appellee Town of Hempstead.

Before SMITH, TIMBERS and GURFEIN,* Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

This appeal involves cross-claims raised in an action reported as United States v. General Douglas MacArthur Senior Village, Inc., 337 F.Supp. 955 (E.D.N.Y.), rev'd, 470 F.2d 675 (2d Cir. 1972), cert. denied sub nom. County of Nassau et al. v. United States, 412 U.S. 922, 93 S.Ct. 2732, 37 L.Ed.2d 149 (1973). In the principal action, the United States, as the holder of a mortgage superior in interest to the tax liens purchased on the same property by the appellants, was permitted to foreclose upon that property of General Douglas MacArthur Senior Village, Inc.; there had been a breach of the mortgage agreement. The cross-claims presently under review constitute attempts by the defendant tax lienors, D. C. R. Holding Corporation and four individual parties, to secure a refund of their purchase price for the liens from Nassau County, the Village of Hempstead and Town of Hempstead. Since the amount due on the government's mortgage exceeded the proceeds of the foreclosure sale, the liens are now totally worthless. Judge Jack B. Weinstein of the Eastern District of New York dismissed the cross-claims on a motion for summary judgment. 366 F.Supp. 302 (1973). By reason of jurisdiction of the principal claim, jurisdiction over these ancillary claims obtains without independent jurisdictional basis.

See, R. M. Smythe & Co. v. Chase National Bank of City of New York, 291 F.2d 721, 724 (2d Cir. 1961); United States v. Championship Sports, Inc., 284 F.Supp. 501, 509 (S.D.N.Y.1968); United States v. Manufacturers Hanover Trust Co., 231 F.Supp. 160, 162 (S.D.N.Y.1964); 3 J. W. Moore, Federal Practice ¶ 13.36, at 13–925 (2d ed. 1974). After consideration of the New York law governing these state law claims, Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), we conclude that these cross-claims are without merit and affirm the judgment.

The appellants' several briefs basically expound three alternative grounds for reversal. One, predicated on the tax-exempt character of the MacArthur property, fails by reason of collateral estoppel, for we held in resolving the principal claim that the property was in fact taxable. United States v. General Douglas MacArthur Senior Village, Inc., *supra*, 470 F.2d 675 at 680. The appellants' two other objections will require more detailed discussion; they are: under the New York Real Property Tax Law (RPTL), McKinney's Consol.Laws, c. 50–a, a subdivision of the state selling a tax lien necessarily warrants the lien's priority; and under the common law of contractual obligation, the sale of worthless tax liens gives rise to an action for rescission.

## I. WARRANTY OF PRIORITY

RPTL § 1464(6) incorporates a warranty of lien validity into every sale of a tax lien by municipalities.[1] A tax lien may be valid, however, yet prove to be worthless because a superior lien on the property leaves no residue to which the inferior lien may attach. To protect against this latter possibility—one

---

\* At the time of oral argument, Judge Gurfein was a United States District Judge for the Southern District of New York, sitting by designation.

1. New York Real Property Tax Law § 1464: 6. In the event that any grantee under such conveyance is unable to obtain possession of the real property conveyed to him by reason of any error or irregularity in the assessment thereof, in the levying of a tax, or in any proceedings for the collection of any tax, the board of trustees shall refund to the purchaser the money so paid with interest, the same to be audited and paid as other village charges.

realized in the case under review—it would be necessary for a tax lien purchaser to require of the seller a warranty of priority. The risk of loss for sale of a lien rendered less valuable, or valueless, by a prior interest would then remain with the seller; the purchaser would be entitled to rescission.

Foreclosed by our prior decision in this case from impugning the lien's validity, *supra,* and not the beneficiaries of an express warranty of priority, the appellants thus seek to establish that a statutorily implied warranty of priority accompanied their transactions. Specifically, they rely on RPTL §§ 1464(3), (5), for the proposition that a municipality selling a tax lien implicitly warrants that it can transfer title and possession, subject *only* to claims of the village, county or state. These provisions are set out in the margin.[2] The encumbrance at issue which rendered the tax liens valueless belonged to the federal government. As such, it was admittedly outside the express exceptions to the conveyance of a fee simple absolute required by these provisions.

Three considerations, however, counsel against the application in this instance of *expressio unius, exclusio alterius,* for which the appellants in effect contend. First, the certificate of sale received by each appellant made the lien purchased subject to superior tax liens of "Sovereignties" and other municipalities. This express contractual reservation does not decide the issue against the appellants because their interest was superseded by a mortgage, rather than tax lien, held by a sovereignty. On the other

hand, this recognition of sovereign claims does infer that an implied exception in RPTL § 1464(3) for federal liens—clearly, liens of a "sovereignty" —would comport with custom and usage and the basic business understanding.

Secondly, one cannot ignore the broader context within which the statute must operate: a federal system in which supremacy resides with the center. U.S. Const. art. VI. Since the state plainly lacks the power to subordinate a federal interest superior under federal law, New Brunswick v. United States, 276 U.S. 547, 48 S.Ct. 371, 72 L.Ed. 693 (1928); *cf.* McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316 (1819), the legislature undoubtedly assumed that an exception in subsection (3) for the United States was understood. The inference, then, that the United States is implicitly included among the superior interest-holders listed in § 1464(3) follows. We would hesitate to find it excluded on less than express terms. *Cf.* In re Gruner, 295 N.Y. 510, 524, 68 N.E.2d 514 (1946); Riverhead Estates Civic Ass'n v. Gobron, 134 N.Y.S.2d 13, 16, 206 Misc. 405 (Suffolk County Ct.1954).

Finally, in RPTL § 1464(6), *supra,* fn. 1, the New York legislature specified various conditions (errors or irregularities in assessment, levy or collection proceedings) justifying a refund. Recognition of these circumstances of lien invalidity as a basis for rescission may seem no more than equity would require. In fact, however, this provision represents a notable advance from the governing law of caveat emptor. *See* the opinion below, 366 F.Supp. 302 at 305–306.

2. New York Real Property Tax Law § 1464:
3. If the real property described in such notice is not redeemed within the time limited, the village treasurer shall, upon written application and the surrender of the certificate of sale together with proof of service by mail of the notice to redeem, or upon application by the board of trustees of the village with such proof of service, execute and deliver to the purchaser or village a conveyance of the real property so sold, the description of which shall include a specific statement of whose title or interest is thereby conveyed, as appears on the record, which conveyance shall vest in the grantee an

absolute estate in fee, subject, however, to all claims the village, county or state may have thereon for taxes, liens or encumbrances.

. . . . .

5. The grantee or his assigns, or the village and its assigns, as the case may be, shall be entitled to have and possess the real property conveyed from and after the execution of such conveyance and may cause any occupants thereof to be removed in the same manner and by the same proceedings as in the case of a tenant holding over without permission of his landlord.

If the New York legislature intended to make the even greater departure from the common law of creating a warranty of priority, we must assume that they would have done so with no less clarity.[3]

In sum, contrary to the appellants' assertion, RPTL §§ 1464(3), (5), require a municipality to warrant that the real property conveyed in consideration of the purchase of the tax lien represents all within the state's power to convey. Since the appellees were powerless to overcome the federal government's mortgage, their failure to convey anything of value to the appellants was not a breach of the duty imposed by § 1464. The statute offers no basis for rescission of the contested purchases.

## II. CONTRACTUAL FRUSTRATION AND IMPOSSIBILITY

■ The common law of contract excuses a party from performing his contractual obligations because of "impossibility of performance" or "frustration of purpose." *See generally,* 6 A. Corbin, Contracts § 1322 (1962). In general, impossibility may be equated with an inability to perform as promised due to intervening events, such as an act of state or destruction of the subject matter of the contract. The doctrine comes into play where (1) the contract does not expressly allocate the risk of the event's occurrence to either party, and (2) to discharge the contractual duties (and, hence, obligation to pay damages for breach) of the party rendered incapable of performing would comport with the customary risk allocation. Essentially, then, discharge by reason of impossibility—as well as the concomitant remedy (to the discharge) of rescission—enforces what can reasonably be inferred to be the intent of the parties at the time of contract.

■ Frustration of purpose, on the other hand, focuses on events which materially affect the consideration received by one party for his performance. Both parties can perform but, as a result of unforeseeable events, performance by party $X$ would no longer give party $Y$ what induced him to make the bargain in the first place. Thus frustrated, $Y$ may rescind the contract. Discharge under this doctrine has been limited to instances where a virtually cataclysmic, wholly unforeseeable event renders the contract valueless to one party. *See,* Alfred Marks Realty Co. v. Hotel Hermitage Co., 170 App.Div. 484, 156 N.Y.S. 179 (2d Dept. 1915); Krell v. Henry [1903] 2 K.B. 740 (C.A.); 6 A. Corbin, Contracts, *supra,* at § 1355.

Against the backdrop of this basic doctrinal distinction between impossibility and frustration, the lack of foundation for the appellants' invocation of common law becomes apparent. Their argument may be summarized as follows: the municipalities' inability to convey title and possession to the MacArthur property due to a foreclosure proceeding by a superior lienor was an event not contemplated by either the seller or purchaser of the tax lien; and this unforeseeable event left the municipalities without the means to perform their part of the contract, thereby discharging the purchasers' duty to perform (i. e., make payment) and providing the basis for rescission.

The corporate appellant places this argument under a frustration of purpose rubric, while the appellant Schwartz denominates it impossibility of performance. Their disagreement is illuminating in that the argument itself fails under either heading because it is such a confused mix of both.

A party invokes impossibility to excuse its own inability to perform. But obviously the appellants can perform because they already have. On the other hand, impossibility may apply to their situation insofar as impossibility may be felt to have discharged the munici-

3. Appellant Schwartz appears to urge RPTL § 1464(6) as an independent basis for refund. In this regard, we reiterate that this subsection literally addresses only problems of lien validity, not lien priority. Furthermore, for the historical reasons outlined immediately above, we reject any invitation to imply this additional basis for refund into § 1464(6) as a matter of consistency with general equitable principles.

palities from performing and thereby created a situation where the appellants would benefit from the rescission secured by the sellers. *Cf.* 6 A. Corbin, Contracts, *supra,* at § 1353. This tack implies, though, that the municipalities' failure to deliver title and possession to the MacArthur property was evidence of non-performance and invitation to mutual rescission; and this thesis of course assumes the very point which the appellants need to prove—that the appellees' duty included delivery of title and possession.

Insofar as a frustration theory inheres in the appellants' argument, it too partakes of a certain circularity. Thus, to argue that the foreclosure by the superior lienor triggers the frustration doctrine is implicitly to characterize that event as cataclysmic. In fact, however, the risk of this event occurring is one which caveat emptor had long since placed with the purchaser. Broadly speaking, the thrust of the common law of tax lien sales, a law notably severe to purchasers, was to place any events depriving the transaction of value within the reasonable contemplation of the parties.

■ Whether the appellants' contractual defense is cast in terms of impossibility or frustration, it proves inadequate. Their argument essentially relies upon the existence of a warranty of priority. Accordingly, the appellants' failure to establish such a warranty, *see* I, *supra,* precludes their success on this ground.

The appellants may be correct, however, in maintaining that sound economics counsels recognition of a warranty of priority. Perhaps lack of this warranty does impose an unfair and unmanageable burden on the purchaser: To protect himself from loss, he must make a title search of any property before purchasing a tax lien on it. (Here a search would have disclosed the government mortgage.) And perhaps a municipality's failure to warrant priority may in the long run be less profitable for it than warranting priority, for the burden and expense of making these title searches—or the risk that attends a purchase made without a prior search—may keep would-be purchasers out of the tax lien market. Nevertheless, this court is not the forum to which these considerations are properly addressed. The New York state legislature has not seen fit to date to override by statute the common law rule that the seller of a tax lien does not warrant its priority. It has carved out other exceptions in the tax lien area to the common law of caveat emptor. It is not for this court to decide, however, that having gone thus far, the legislature must go still further. Similarly any waiver of federal mortgage priority in tax lien cases is for the Congress, not this court.

The appellees did not warrant the priority of the tax liens which they sold to the appellants, nor did the appellees' failure to convey title and possession to the MacArthur property free from the lien of the government mortgage discharge the appellants' duty to pay the purchase price for the liens under an impossibility of performance or frustration of purpose theory. The district court properly granted the appellees' motion for summary judgment.

Affirmed.

GURFEIN, Circuit Judge (dissenting):

This seems to me to be a case where an honest shopkeeper would have given the customer his money back. While public officials may not dispense such largesse, the intriguing question is whether courts may not compel them to do so in the interest of fairness.

I respectfully dissent from the opinion of my colleagues to the contrary. While I agree with a good deal of what Judge Smith has written about impossibility and frustration, I approach the case from the view that there has been a failure of consideration based on a mutual mistake of law which justifies rescission.

A local property tax lien arises from a failure to pay taxes. The failure is

also a breach of a covenant in the mortgage. Everyone knows as a matter of law that such tax lien comes ahead of the mortgage, R.P.A. & P.L. § 1354(2), McKinney's Consol.Laws, c. 81, subject to a right of redemption in the mortgagor. R.P.T.L. § 1010. When the county or village sells a tax lien it says that this is a tax we ourselves could have collected ahead of the mortgage, subject only to a right of redemption, if we had not sold the lien to you. In this case, however, the county or village itself could *not* have collected the tax ahead of the mortgage. It was not selling a tax lien with characteristics legitimately and reasonably expected of a local property tax lien.

The reason the county or village was not selling a tax lien with these known characteristics is that the mortgage on the particular property, MacArthur Village, was held by the United States. On the earlier appeal, this Court held that the lien of the United States on MacArthur Village could not be defeated by tax liens of local governmental units. United States v. General Douglas MacArthur Senior Village, Inc., 470 F.2d 675 (2 Cir. 1972), cert. denied sub nom., County of Nassau et al. v. United States, 412 U.S. 922, 93 S.Ct. 2732, 37 L.Ed.2d 149 (1973).[1] The lien of the United States owned mortgage would not have been defeated by the local tax lien even if it had remained in the hands of the County of Nassau or the village, as the case may be.

This case does not involve priorities as such. There is a difference in kind between an ordinary type of federal tax lien such as one arising out of an income tax assessment or judgment and a federal mortgage lien. The former has no re-lation to the property but becomes a lien upon it to enforce a separate right of the federal government. The latter relates to the property itself. For that reason, in the earlier case involving MacArthur Village, this Court was not content to rely on the familiar rule applicable to priorities between ordinary federal tax liens and local property tax liens—the rule of United States v. New Britain, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954), "first in time is first in right." Under that rule the appeal could have been decided by simply applying it to sanction the priority of the federal mortgage on MacArthur Village which was concededly "first in time." 470 F.2d at 677.[2] This Court went further, however, to hold that under S. R. A. Inc. v. Minnesota, 327 U.S. 558, 66 S.Ct. 749, 90 L.Ed. 851 (1946), and New Brunswick v. United States, 276 U.S. 547, 48 S.Ct. 371, 72 L.Ed. 693 (1928), "local governments cannot take any action to collect unpaid taxes assessed against property which would have the effect of reducing or destroying the value of a federally held purchase-money mortgage lien." 470 F.2d 679, 680.

Judge Kaufman (now Chief Judge) noted:

"In short, the land is not immune from local taxation, but the federal interest is, and the local governments cannot enforce their liens until the federal debt is satisfied." Id.

The unenforceability is not what we normally describe in terms of relative priority. It is rather an infirmity' imposed by implication from the federal constitution in the absence of Congressional consent. McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316 (1819).[3] The

---

1. This Court specifically rejected the contention that in enacting the statute under which HUD made the loan to MacArthur Village, 12 U.S.C. § 1701q, Congress waived the immunity mandated by New Brunswick v. United States, 276 U.S. 547, 48 S.Ct. 371, 72 L.Ed. 693 (1928), discussed *infra*. 470 F.2d at 680; see 12 U.S.C. § 1733.

2. The Court held that the 1966 Tax Lien Act, 26 U.S.C. § 6323(b)(6)(A), giving certain priorities to local property tax liens over federal *tax* liens did not apply in the case of federal *mortgage* liens.

3. Thus, New York could not provide by statute (C.P.A. § 1087) that local property tax liens achieve priority over federal liens by being deemed "expenses of the sale" in foreclosure by the mortgagee. United States v. Buffalo Savings Bank, 371 U.S. 228, 83 S.Ct. 314, 9 L.Ed.2d 283 (1963), *reversing* Buffalo Savings Bank v. Victory, 11 N.Y.2d 31 (1962). And see United States v. Equitable Life As-

tax lien imposed upon property on which the federal government holds a mortgage is not a true tax lien but is, at best, a hybrid. In New Brunswick v. United States, *supra*, 276 U.S. at 556, 48 S.Ct. 371, 373, 72 L.Ed. 693, the Court concluded that where the United States had a lien equivalent to a mortgage, the City could *impose* taxes on the equitable owner provided that the rights of the United States "are expressly excluded from such sales [tax sales] and they are made, by express terms, subject to all such prior rights, liens, and interests" (emphasis added). No statute of New York could constitutionally make the federal mortgage subject to the enforcement of the local tax lien.[4] The constitutional validity of the *imposition* of the local property tax is conditioned upon an implied agreement of the locality to exclude such tax liens from tax sales and also to state "by express terms" that such liens are subject to the prior rights of the United States.[5] The County of Nassau and the Village took advantage of this limited right to tax property subject to a federal mortgage lien but failed to live up to the second part of the constitutional dispensation—to exclude the tax lien arising from the tax lien sale.

If that is so, it seems to me that the county was not in a position to sell something that is commonly regarded as a proper tax lien. It owned no such lien on *these* premises, for while it could tax in a measure that included the federal mortgage interest, S. R. A. Inc. v.

Minnesota, *supra*, it simply could not *enforce* the tax against the federal mortgage interest. Yet a buyer without notice would, I think, be justified in believing that a failure to announce that this was not an ordinary tax lien meant that it was precisely that.

This justified belief is strengthened by the circumstance that notice was given that the lien was subject to superior *tax* liens of such sovereignties but nothing was said of such *mortgage* liens. The majority acknowledges that "[t]his express contractual reservation does not decide the issue against the appellants because their interest was superseded by a mortgage, rather than tax lien, held by a sovereignty."

I venture to say that the logical extension of this is that since warning was given it should have been given correctly. The majority glean from this limited notice the inference that an implied exception in R.P.T.L. § 1464(3) "for [all] federal liens . . . would comport with custom and usage and the basic business understanding." [6]

If this case is one of first impression, I do not see how we can find either "custom and usage" or a "basic business understanding" that there was one particular type of mortgage to which the tax lien would not be superior. So unclear was "custom and usage" that the scholarly District Judge decided, on that very question, that the lien of United States was *not* superior to the local tax lien. United States v. General Douglas

surance Society, 384 U.S. 323, 86 S.Ct. 1561, 16 L.Ed.2d 593 (1966).

4. The New York Legislature may have recognized this in a limited way when it provided that parcels listed in a notice of tax sale "mortgaged to the commissioners of the land office for loaning certain moneys of the United States" shall be withdrawn from sale or bid in by the State Comptroller. R.P.T.L. § 1004.

5. New Brunswick, *supra*, was apparently not cited to the District Court. There is no reference to it in its opinion.

6. R.P.T.L. § 1464(3) reads:
"If the real property described in such notice is not redeemed within the time limited, the village treasurer shall, upon written application and the surrender of the certificate of sale together with proof of service by mail of the notice to redeem, or upon application by the board of trustees of the village with such proof of service, execute and deliver to the purchaser or village a conveyance of the real property so sold, the description of which shall include a specific statement of whose title or interest is thereby conveyed, as appears on the record, which conveyance shall vest in the grantee an absolute estate in fee, subject, however, to all claims the village, county or state may have thereon for taxes, liens or encumbrances."

MacArthur Senior Village, Inc., 337 F.Supp. 955 (E.D.N.Y.1972), and for this appeal to come to us now, that decision had to be reversed by this Court. 470 F.2d 675 (2 Cir.) (MacArthur I).

A failure to deliver a tax lien enforcible by the seller itself is thus joined to a mutual mistake of law. Neither the seller nor the buyers knew that the tax lien did not possess the normal legal characteristics of a tax lien.[7] The seller was unjustly enriched when it was paid for a lien it could not itself enforce against the federal mortgage interest. See Rosenblum v. Manufacturers Trust Co., 270 N.Y. 79, 85, 200 N.E. 587 (1936).

While a benevolent casuistry may have been necessary in earlier days to convert a mistake of law into a mistake of fact in order to justify rescission, 3 Corbin, Contracts § 620; 13 Williston, Contracts § 1589, the New York Legislature has taken the forward step long urged by scholars. C.P.L.R. § 3005 provides:

"When relief against mistake is sought in an action or by way of defense or counterclaim, relief shall

not be denied merely because the mistake is one of law rather than of fact."

When the mistake of law is a part of the fundamental basis of the transaction, rescission is permitted because there is present the further element of failure of consideration. Williston, *supra*, § 1584.[8] For an application of the modern view, see Ryan v. Vickers, 158 Colo. 274, 406 P.2d 794 (1965), cert. denied, 383 U.S. 944, 86 S.Ct. 1201, 16 L.Ed.2d 208 (1966).[9]

Thus, if we apply New York law under Erie R. R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), we find no decisional law on rescission involving a federal mortgage.[10] Nor, since we are not dealing with priorities, is any statute specifically in point.[11]

The suggestion of the majority that since the Legislature has listed specific equitable exceptions to the doctrine of *caveat emptor*, R.P.T.L. § 1464(6), no others may be held to exist assumes an exclusivity in derogation of the general equitable powers of courts.[12] While I

---

7. R.P.T.L. § 1006 provides that the certificate which the purchaser receives on a tax sale shall "contain a statement to the effect that if lands described thereon are not redeemed, the purchaser may complete the purchase and take a conveyance of the lands as provided in title one of article ten of this chapter, or, at his option, foreclose his lien pursuant to title two of article eleven thereof."

Here, although there was no redemption, a deed was not forthcoming as promised.

8. The Real Property Tax Law itself, provides that any conveyance to a tax certificate purchaser "shall be subject to cancellation by reason of . . . (c) any defect in the proceedings affecting jurisdiction upon constitutional grounds . . . ." R.P.T.L. § 1020(3).

9. In *Ryan*, the parties had contracted upon the assumption that a lien held by plaintiff's assignor on defendant's equipment was superior to all other liens, including one held by the Small Business Administration. A federal court subsequently held that the S. B.A. lien was superior. In the state court action, defendant raised mistake of law as a defense to an action on the contract and was granted rescission. The court characterized the situation as a "mutual mistake as to the applicability of existing law to the

factual situation here at hand." 406 P.2d at 797.

10. Nor would the New York courts have complete freedom to declare "New York law" in view of the explicit limitations imposed by New Brunswick v. United States, *supra*. Cf. Aquilino v. United States, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960); id. at 516 (Harlan, *J.*, dissenting); Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943).

11. As Justice Frankfurter has written: "The underlying assumptions of our dual form of government, and the consequent presumptions of a legislative draftsmanship which are expressive of our history and habits, cut across what might otherwise be the implied range of legislation." Some Reflections on the Reading of Statutes, Cardozo Memorial Lectures, (Ass'n of the Bar of the City of New York) 215, 232.

12. Section 1464(6) reads:

"In the event that any grantee under such conveyance is unable to obtain possession of the real property conveyed to him by reason of any error or irregularity in the assessment thereof, in the levying of a tax, or in any proceedings for the collection of any tax, the board of trustees shall refund to the purchaser the money so paid with interest, the same to be audited and paid as other village charges."

recognize that generally a court should not add to a statute, see Iselin v. United States, 270 U.S. 245, 250–251, 46 S.Ct. 248, 70 L.Ed. 566 (1926) (Brandeis, *J.*), it is not a valid generalization that the statute must be taken to defeat any judicial remedy which exists independent of the statute.

In short, I do not think the loose generalization, originally made when *caveat emptor* still reigned, that one buys a tax lien at his peril applies to this situation which involves an unusual interplay of federal and state power arising from our dual system of government.

Incidentally, a refund to the purchasers here, as Judge Weinstein perceptively recognized, would help the local units of government to sell their tax liens, because it would eliminate a trap for the unwary which the wary might seek to escape by abstaining entirely from attendance at tax sales.

I would reverse the summary judgment on behalf of the appellees and grant it on behalf of appellants.